United States Court of Appeals,

Eleventh Circuit.

No. 95-6922.

Darrell COMBS, Plaintiff-Appellee,

v.

PLANTATION PATTERNS, Meadowcraft Company, and Sam Blount Company, Inc., Defendants,

Meadowcraft, Inc., Defendant-Appellant.

Feb. 20, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV94-T-103-E), Myron H. Thompson, Chief Judge.

Before BIRCH, BLACK and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Meadowcraft, Inc. appeals from a judgment entered against it pursuant to a jury verdict in favor of Darrell Combs in this Title VII race discrimination case. The jury found that Meadowcraft denied Combs a supervisory position because of his race. The dispositive issue in the appeal is whether Combs produced evidence sufficient to allow a reasonable factfinder to disbelieve Meadowcraft's proffered nondiscriminatory reasons for failing to promote Combs. We conclude that he did not, and that Meadowcraft was entitled to judgment as a matter of law for that reason.

Part I of this opinion is a discussion of the facts. In Part II, we summarize the procedural history of this case, followed by a brief discussion of the standard of review in Part III. Our discussion of the law and application of it to the facts is contained in Part IV, which has four subparts.

Subparts A through C of Part IV contain an explication of the

legal framework applicable to discrimination cases in light of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). It is in those parts of this opinion that we answer the dicta contained in the recent panel opinion in *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436 (11th Cir.1996), which is critical of the holding in *Howard v. BP Oil Co.,* 32 F.3d 520 (11th Cir.1994), and by implication, of a number of our other decisions in line with it. *Howard* and those decisions like it hold that after a plaintiff has established a prima facie case, evidence from which the factfinder could find that all of the employer's proffered reasons for the challenged job action are pretextual entitles the plaintiff to have the factfinder decide the ultimate issue of discrimination. We answer the *Isenbergh* panel's criticism of the *Howard* line of decisions and explain why the holding of those cases is the law of this circuit, as well as at least eight other circuits.

Subpart D of Part IV applies the law to the facts of this case, and Part V contains our conclusion.

## I. BACKGROUND FACTS

Meadowcraft owns and operates a manufacturing plant in Wadley, Alabama. The plant produces outdoor patio furniture, which is sold under the brand name "Plantation Patterns." The plant's workforce is divided into a number of departments, including materials, forming, welding, painting, packing, and shipping. The departments have various shifts, and there are supervisors for each shift.

In January 1992, Meadowcraft hired Combs, who is black, to

work in the plant as a "crimp and form" operator. Shortly thereafter, Combs was promoted to "material handler" and given a pay raise. Combs was supervised by George Anderson and Edward Lane. Both Anderson and Lane are black, and both worked as supervisors in the plant's welding department.

Shortly after Combs started working at Meadowcraft, he introduced himself to John Hart, the plant superintendent. Combs told Hart that he had a degree in computer science from Alabama A & M and that he was interested in doing office work that would allow him to use his degree. In June 1992, Hart made arrangements with the plant manager for Combs to do a temporary assignment programming personal computers in the plant and preparing spreadsheets. At some point, those arrangements included reclassifying Combs to be a plant "lead man"—meaning a quasisupervisor—even though he was not actually doing lead man work or supervising anyone. When Combs was nominally promoted to lead man, his pay was increased.

Prior to his pay raise, Combs held a second job as manager at a low-income apartment complex at which he was responsible for maintenance, cleaning, and painting, as well as supervising teenagers who did maintenance work at the complex. After Combs' pay raise, he quit his second job.

On several occasions, when Meadowcraft officials from Birmingham headquarters visited the plant, Combs was asked to "hide" from the officials. At trial, Combs implied that he was asked to hide because he is black, but he admitted on cross-examination that he was never told that was the reason. Hart

testified that Combs was asked to hide because headquarters had not approved his computer job, and that he had explained that to Combs.

While Combs was assigned to the temporary computer project, Hart asked him whether he would be interested in being a supervisor at the plant. Combs said that he was interested. Although Combs indicated an interest in supervisory positions in both the painting and welding departments, he was awarded neither position. Both positions were awarded to white persons. At trial, Combs conceded that the person who was made painting supervisor was better qualified than he, and Combs abandoned his discrimination claim with respect to that position. Meadowcraft's failure to promote Combs to the welding supervisor position was the only failure-to-promote claim that was submitted to the jury, and it is the only claim in controversy in this appeal.

Meadowcraft awarded the welding supervisor position to Fred Walker in July 1992. Walker served in that capacity for ten or eleven days, but then was reassigned to work temporarily as a supervisor in the packing department. That temporary reassignment lasted for about a year, after which Walker returned to his position as a supervisor in the welding department.

Around November 1992, after Combs had completed his temporary computer assignment, he was asked to assist with a "bar code" scanning project in the plant's packing department—where Walker was then a temporary supervisor. By December 1992, the scanning project had been put on hold, and Hart told Combs that he had run out of temporary assignments for him. Hart suggested that Combs return to his position as a material handler in the plant. Combs

declined to return to his material handler job, and his employment at Meadowcraft came to an end on December 18, 1992.[1]

## II. PROCEDURAL HISTORY

In February 1993, Combs filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful racial discrimination. After receiving his right-to-sue letter from the EEOC, Combs filed suit in the Middle District of Alabama, alleging claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and on 42 U.S.C. § 1981. Combs sought recovery under the following race discrimination theories: (1) that Meadowcraft terminated him from his employment because of his race; (2) that Meadowcraft subjected him to impermissible racial harassment; and (3) that Meadowcraft denied him a supervisory position because of his race. Combs also appended a state law claim for the tort of outrage, but the district court dismissed that claim with prejudice, and Combs has not appealed that dismissal.

Combs' three race discrimination claims were tried to a jury on August 21-25, 1995. At trial, Meadowcraft proffered evidence in support of three legitimate, nondiscriminatory reasons for its decision to promote Walker instead of Combs. Those reasons were: (1) Walker's superior welding experience; (2) the recommendations of supervisors Lane and Anderson; and (3) Walker's superior

---

[1] Meadowcraft contends that Combs resigned voluntarily. In his complaint and at trial, Combs contended that he was not offered the option of returning to his job as material handler, and that he was laid off or forced to quit. However, the jury specifically rejected Combs' discriminatory termination claim, and the only claim at issue on appeal is Combs' failure-to-promote claim.

supervisory experience. At trial, Meadowcraft moved for judgment as a matter of law both at the close of the plaintiff's case and at the close of all the evidence. The district court denied those motions, and the case was submitted to the jury.

The jury unanimously rejected Combs' discriminatory termination claim, but could not reach a unanimous verdict on the remaining two claims. Thereafter, the parties agreed that the remaining two claims could be decided by majority verdict. The jury by a majority vote determined that Combs had not proven his claim for discriminatory harassment, but that he had proven his claim that he was denied a supervisory position because of his race. The jury awarded Combs compensatory damages of $76,552 and punitive damages of $42,700.

After the jury returned its verdict, Meadowcraft renewed its motion for judgment as a matter of law and made an alternative motion for a new trial. In support of those motions, Meadowcraft argued (among other things) that Combs had failed to put forward sufficient evidence to permit the jury to disbelieve the nondiscriminatory reasons that Meadowcraft had proffered in explanation of its decision to promote Walker to welding supervisor instead of Combs. The district court denied both the principal and alternative motions, and this appeal followed.[2]

---

[2]On appeal, Meadowcraft contends that it is entitled to a new trial, even if it is not entitled to judgment as a matter of law. Meadowcraft asserts three grounds in support of that contention: (1) insufficiency of the evidence; (2) prejudicial admission of inadmissible evidence; and (3) excessive damages. Because we conclude that Meadowcraft is entitled to judgment as a matter of law, we do not discuss further Meadowcraft's arguments in favor of a new trial.

## III. STANDARD OF REVIEW

We review *de novo* a district court's denial of a defendant's renewed motion for judgment as a matter of law, applying the same standards as the district court. *Sherrin v. Northwestern Nat'l Life Ins. Co.,* 2 F.3d 373, 377 (11th Cir.1993). Those standards require us to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In conducting our review:

> [W]e consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.

*Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989) (footnotes omitted).

Under the foregoing standard, the nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law: "[T]here must be a substantial conflict in evidence to support a jury question." *Id.* To summarize, we must consider all the evidence in the light most favorable to Combs and determine "whether or not reasonable jurors could have concluded as this jury did based on the evidence presented." *Quick v. Peoples Bank,* 993 F.2d 793, 797 (11th Cir.1993) (citation and internal quotation marks omitted).

## IV. WHETHER MEADOWCRAFT WAS ENTITLED TO JUDGMENT AS A MATTER OF

**LAW**

*A. The Issue—Once a Prima Facie Case Has Been Established, Does Evidence Sufficient to Disprove All of the Employer's Proffered Reasons Preclude Judgment as a Matter of Law for the Employer?*

Meadowcraft and Combs disagree both as to the applicable law and the weight of the evidence. Meadowcraft contends that it is entitled to judgment as a matter of law because (1) Combs failed to produce evidence sufficient to allow a reasonable factfinder to disbelieve its proffered nondiscriminatory reasons for promoting Walker instead of Combs, and (2) even if Combs had produced such evidence, he still failed to present evidence that discrimination was the true reason for the decision. According to Meadowcraft, it is entitled to judgment as a matter of law even if a reasonable factfinder could have rejected each of its proffered nondiscriminatory reasons for promoting Walker instead of Combs, because Combs had the additional burden of demonstrating that Meadowcraft's decision was motivated by racial animus. For that proposition, Meadowcraft relies primarily on *Walker v. NationsBank of Florida,* 53 F.3d 1548 (11th Cir.1995), and dicta contained in this circuit's recent decision in *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436 (11th Cir.1996).

Combs takes issue with Meadowcraft's view of the law and the evidence. First, Combs contends that he put forward sufficient evidence to permit a reasonable factfinder to disbelieve Meadowcraft's proffered nondiscriminatory reasons for its decision, and he argues that no further evidence of discrimination is required for the jury's verdict to be sustained. Combs relies primarily on this Court's decision in *Howard v. BP Oil Co.,* 32 F.3d

520 (11th Cir.1994), as well as the Supreme Court's landmark decision in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Alternatively, Combs contends that he put forward sufficient additional evidence of discriminatory intent to support the jury's verdict—even if rejection of Meadowcraft's proffered nondiscriminatory reasons were not enough, when coupled with his prima facie case, to support a finding of discrimination.[3]

We turn first to the parties' legal arguments. In light of the parties' differing views of the law governing Title VII discrimination claims that rely on circumstantial evidence, and the arguments that the parties make in support of those views, we think it appropriate to examine the applicable law in some detail. Such a review is especially appropriate in light of the *Isenbergh* panel's recent observation in dicta that, "some confusion exists in the law of this circuit about whether *Hicks* always precludes judgments as a matter of law for employers whenever there is a plausible basis on which to disbelieve the employer's proffered reason for the employment decision in question," 97 F.3d at 442.

We believe that any confusion about this question in our circuit's law—defined by holdings, not dicta—is limited, and we

---

[3]According to Combs' alternative theory, the jury's verdict is supported by evidence that Meadowcraft had no established criteria for promotion to supervisor and only two out of twelve plant supervisors were black. We reject that theory without detailed discussion, because the evidence offered to support it was undeveloped and without analytic foundation. *See, e.g., Brown v. American Honda Motor Co.,* 939 F.2d 946, 952-53 (11th Cir.) (noting that statistics without analytic foundation are "virtually meaningless"), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992).

hope that our discussion will limit that confusion even more.  As we will discuss, there is a substantial line of cases in this circuit that adequately and accurately sets forth the legal principles governing the nature and quantum of evidence necessary to permit a jury to infer discrimination.  Before turning to those cases, however, we will review briefly the basic legal framework governing discrimination cases that are based on circumstantial evidence.

*B. The Basic Framework Governing Discrimination Cases Based on Circumstantial Evidence*

Despite a Title VII plaintiff's failure to present direct evidence of discrimination, he may nevertheless present sufficient circumstantial evidence of discrimination to create a jury question.  In evaluating Title VII claims supported by circumstantial evidence, we use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824;  *Burdine,* 450 U.S. at 253-54 & n. 6, 101 S.Ct. at 1093-94 & n. 6.

> Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (footnote omitted).

The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. To satisfy that burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254-55, 101 S.Ct. at 1094 (citation and footnote omitted). "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1096 (emphasis added).

If a defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the *McDonnell Douglas* framework "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094-95 & n. 10. However, elimination of the presumption does "not imply that the trier of fact no longer may consider evidence previously introduced to establish a prima facie case." *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10. As the Supreme Court has explained:

> A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the

> trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Id.*

Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision. According to the Supreme Court:

> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.... [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.*

*Id.* at 256, 101 S.Ct. at 1095 (emphasis added) (citation omitted). In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Id.; McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

*C. The Effect of Evidence Sufficient to Permit Rejection of the Employer's Proffered Nondiscriminatory Reasons*

### 1. The Supreme Court's Hicks Opinion

The framework for evaluating discrimination cases based on circumstantial evidence, which we have just discussed, had been established for some time when the Supreme Court decided *St. Mary's*

*Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Before the *Hicks* decision, however, the circuits had split over the effect of a decision by the factfinder that the proffered nondiscriminatory reasons given by the employer were not the real reasons for its employment decision. Some of the circuits had held that a finding of pretext mandated a finding of illegal discrimination, while others had held that a finding of pretext did not. *See Hicks,* 509 U.S. at 512-13, 113 S.Ct. at 2750 (listing cases). The divergent views of the circuits on the effect of a finding of pretext prompted the Supreme Court to grant certiorari in *Hicks* to resolve the question. *Id.* at 512, 113 S.Ct. at 2750.

In *Hicks,* the plaintiff had brought a Title VII lawsuit, alleging he had been demoted and discharged because of his race. *Id.* at 505, 113 S.Ct. at 2746. After a full bench trial, the district court found for the defendant, despite its finding that the reasons the defendant gave for its actions were not the real reasons for the plaintiff's demotion and discharge. *Id.* at 508, 113 S.Ct. at 2748. The Eighth Circuit reversed, holding that once the plaintiff had discredited all of the employer's proffered nondiscriminatory reasons for its decision, the plaintiff was entitled to judgment as a matter of law. *Id.* The Supreme Court reversed the Eighth Circuit and held that judgment for the plaintiff was not compelled by rejection of all of the employer's proffered nondiscriminatory reasons. *Id.* at 511, 113 S.Ct. at 2749.

Although the Supreme Court in *Hicks* rejected the position that disbelief of the employer's proffered reasons *requires*

judgment for the plaintiff, the Court was careful to explain that such disbelief, in tandem with the plaintiff's prima facie case, is sufficient to *permit* the factfinder to infer discrimination. The Court said:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, *upon such rejection, "[n]o additional proof of discrimination is required."*

*Id.* at 511, 113 S.Ct. at 2749 (quoting *Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487, 493 (8th Cir.1992)) (footnote omitted) (second emphasis added). That is a pretty clear statement.

Four justices dissented in *Hicks,* but none of them did so because they thought that rejection of an employer's proffered nondiscriminatory reasons, together with the prima facie case, is insufficient to permit the factfinder to infer the ultimate fact of intentional discrimination. To the contrary, the dissenting justices would have gone even further than the majority did. They would have affirmed the Eighth Circuit's holding that once the factfinder rejects the employer's explanations for its decision, a finding of discrimination is required, and the plaintiff is "entitled to judgment." *See Hicks,* 509 U.S. at 532-33, 113 S.Ct. at 2760-61 (dissenting opinion of Souter, J., joined by White, Blackmun, and Stevens, JJ.).

Based on the Supreme Court's clear statement in the majority opinion in *Hicks,* read together with the rationale of the dissenting justices, we understand the *Hicks* Court to have been

unanimous that disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination. Therefore, it follows from *Hicks* that a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action. With one exception, which we will discuss later, up until the *Isenbergh* opinion, not only the holdings but also the statements of this Court have been entirely consistent with that understanding of the *Hicks* decision.

## 2. The Post-Hicks Case Law in this Circuit Before Isenbergh

Just a few months after the Supreme Court decided *Hicks,* we were called upon to apply it in *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993). In *Hairston,* a terminated employee sued his former employer, alleging age discrimination and retaliatory termination.[4] The district court granted summary judgment for the employer. We reversed. In doing so, we explained that, under *Hicks,* if the employer carries its burden of production (by articulating legitimate reasons for the action), the plaintiff must demonstrate "that the proffered reason

---

[4]Although *Hairston* was an age discrimination case brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and not under Title VII, "[t]he Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII." *Hairston,* 9 F.3d at 919 (citing *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)). Indeed, the *Isenbergh* panel opinion, which we discuss *infra* in some detail, acknowledges that the Title VII burden-shifting framework of *McDonnell Douglas* and *Burdine* also applies to age discrimination cases. *See Isenbergh,* 97 F.3d at 440.

was not the true reason for the employment decision." *Id.* at 919 (quoting *Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747) (internal quotation marks omitted). Following the *Hicks* rule, we did *not* hold that additional proof of discrimination would be required at trial. Instead, we explained:

> *The plaintiff may succeed* by directly persuading the court at trial that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.* In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case.
>
> ....
>
> [P]laintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext....

*Id.* at 920-21 (citations omitted) (emphasis added). Because the plaintiff in *Hairston* had submitted sufficient evidence to permit the factfinder to find that the employer's proffered reasons were pretextual, we held it was error for the district court to grant summary judgment. *Id.* at 921.

Thus *Hairston,* our first decision on this issue following *Hicks,* clearly held that one way a plaintiff may succeed in establishing discrimination is by showing that the employer's proffered explanations are not credible. When that happens, the plaintiff may or may not ultimately prevail in the litigation, because the factfinder may or may not choose to make the permissible inference of discrimination. However, as we explained in *Hairston,* once the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered

explanations, summary judgment is not appropriate, because "[i]ssues of fact and sufficiency of evidence are properly reserved for the jury." *Id.* at 921. We said nothing in *Hairston* about the plaintiff being required to establish anything more than a prima facie case plus the falsity of the tendered explanations; we said nothing about anything else being required for the plaintiff to avoid summary judgment, because nothing else is required.

In *Batey v. Stone,* 24 F.3d 1330 (11th Cir.1994), we were again called upon to apply the *Hicks* rule, this time in the context of sex discrimination. In *Batey,* we recognized that under *Hicks,* evidence demonstrating the incredibility of the employer's proffered explanations is not, standing alone, enough to "*compel* judgment for the plaintiff." *Id.* at 1334 n. 12 (emphasis added) (citation and internal quotation marks omitted). Nevertheless, we held that such evidence is sufficient to satisfy the plaintiff's burden in responding to a summary judgment motion, because *Hicks* permits the trier of fact to base a finding of discrimination on rejection of the employer's proffered nondiscriminatory reasons, taken together with the plaintiff's prima facie case. *Id.* at 1334. Because the plaintiff in *Batey* had produced sufficient evidence for the factfinder to disbelieve the reasons that the employer proffered for the employment decision, we reversed the district court's grant of summary judgment for the employer. *Id.* at 1335-36. Consistent with our *Hairston* precedent, and with *Hicks,* we held that evidence of pretext, when added to a prima facie case, is sufficient to create a genuine issue of material fact that precludes summary judgment. *Id.*

*Batey* was followed closely by our decision in *Howard v. BP Oil Co.,* 32 F.3d 520 (11th Cir.1994). In *Howard,* we reversed the district court's grant of summary judgment for the defendant where there was sufficient evidence to permit the factfinder to reject the defendant's proffered reasons for awarding gas station dealerships to white and Asian dealers instead of to the plaintiff, who was black. We explained the effect of that evidence as follows:

> [*Hicks* ] holds that *proof* that a defendant's articulated reasons are false is not *proof* of intentional discrimination; it is merely *evidence* of intentional discrimination. However, *evidence* of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

*Id.* at 525 (emphasis in original). In *Howard,* as in *Hairston* and *Batey,* we held that summary judgment was inappropriate because, taken together with the plaintiff's prima facie case, "the fact finder's rejection of [the] defendant's proffered reasons is sufficient circumstantial evidence upon which to base a judgment for the plaintiff." *Id.* at 527.

We again addressed application of the *Hicks* rule in *Cooper-Houston v. Southern Railway Co.,* 37 F.3d 603 (11th Cir.1994). In that case, we reversed the district court's grant of summary judgment in favor of an employer where the evidence was sufficient to permit the factfinder to reject the employer's proffered explanation for its employment decision. We explained that in order to avoid summary judgment, "[the plaintiff] was ... obligated to present evidence that [the employer's] legitimate reasons were not what actually motivated its conduct," and we held that the

plaintiff had met that obligation. *Id.* at 605 (citations omitted). The plaintiff's pretext evidence in *Cooper-Houston* included evidence that the employer had made racially derogatory remarks in the workplace, so it was unnecessary to discuss whether summary judgment would have been inappropriate even if the plaintiff's pretext evidence itself had not been racially charged. Significantly, however, we did *not* say that evidence of racially prejudiced attitudes was required for proof of pretext, even though such evidence was present in that case. Therefore, *Cooper-Houston* represents our fourth post-*Hicks* decision on this issue, all consistently establishing the law of this circuit that a prima facie case plus evidence permitting disbelief of the employer's proffered reasons equals the plaintiff's entitlement to have the factfinder decide the ultimate issue of discrimination. So far, so good. But then came the incongruent *Walker* decision.

In *Walker v. NationsBank of Florida,* 53 F.3d 1548 (11th Cir.1995), a panel of this Court affirmed the grant of judgment as a matter of law in favor of the employer in an age and sex discrimination case, even though the plaintiff had established a prima facie case and had put on evidence sufficient to permit the factfinder to disbelieve all of the employer's proffered reasons for the adverse employment action. *Id.* at 1556-58. Despite that evidence, the *Walker* panel said that "Walker did not produce evidence that raised a suspicion of mendacity sufficient to permit us to find on this record that the bank intentionally discriminated against her on the basis of age and/or sex." *Id.* at 1558. For that reason, the panel concluded that "[r]easonable and fair-minded

persons, in the exercise of impartial judgment, would not conclude that the bank had discriminated against [the plaintiff] on the basis of her age or sex." *Id.*

In a concurring opinion, Judge Johnson accurately noted that the majority had exceeded its proper role by "deciding whether evidence of pretext supports an inference of intentional discrimination," a task that requires credibility determinations and the weighing of evidence—which is the jury's function. *Id.* at 1563 (Johnson, J., concurring). As Judge Johnson pointed out, 53 F.3d at 1561-62, the majority's reasoning was not consistent with the teaching of *Hicks,* or with our decisions in *Howard* and *Batey.* Judge Johnson agreed with the result in *Walker* only because, in his view, the evidence was not sufficient to permit a factfinder to reject the employer's proffered reasons for its action. *Id.* at 1564-65.

As we have recognized before, "no one is perfect, least of all federal appellate judges, and from our mistakes and oversights spring inconsistent decisions which we must deal with as best we can." *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993). The *Walker* decision is a mistake. Not only is *Walker* inconsistent with the Supreme Court's clear instruction in *Hicks,* but it is also inconsistent with the holdings of our *Hairston, Batey, Howard,* and *Cooper-Houston* decisions. Where there are inconsistent panel decisions, "the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *United States v. Dailey,* 24 F.3d 1323, 1327 (11th Cir.1994) (quoting *Clark v. Housing Auth. of Alma,* 971 F.2d 723, 726 n. 4

(11th Cir.1992)).  Our next decision on the issue at hand is consistent with that principle, because it followed the law established in the earlier decisions instead of the *Walker* decision.

In *Richardson v. Leeds Police Department,* 71 F.3d 801 (11th Cir.1995), we reversed the district court's entry of judgment as a matter of law in a racial discrimination case, after the close of all the evidence, because the evidence was sufficient to permit a jury to disbelieve the employer's proffered reasons for its adverse employment decision.  In reviewing the law applicable to these cases, we cited *Hicks* and explained:

> If the defendant meets this burden [of proffering a nondiscriminatory reason for its decision], the plaintiff must then have the *opportunity to persuade the trier of fact,* through the presentation of his own case and by cross-examining the defendant's witnesses, that the reason proffered was not the real basis for the decision, but a pretext for discrimination.

*Richardson,* 71 F.3d at 806 (emphasis added).  Of course, persuading the trier of fact "that the proffered reason was not the real basis for the decision" is pointless unless that trier of fact is then permitted to make the inference, which *Hicks* permits, that the disbelieved reason is "but a pretext for discrimination." Therefore, the fact that "a reasonable jury could ... have concluded that [the employer's proffered explanation] was not the true reason he was not rehired," precluded entry of judgment as a matter of law in *Richardson,* 71 F.3d at 807.  That holding, of course, is inconsistent with *Walker,* but is consistent with the binding precedents of *Hicks, Hairston, Batey, Howard,* and *Cooper-*

*Houston.*[5]

To summarize, with the exception of *Walker,* which is an anomaly, this circuit's post-*Hicks* decisions uniformly hold that once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law. Nevertheless, that well-established rule of law was recently called into question in dicta contained in *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436 (11th Cir.1996).

### 3. The Isenbergh Dicta

In *Isenbergh,* a former employee brought an Age Discrimination in Employment Act lawsuit against his former employer when, following a merger, the employee was not awarded a new managerial position. *Id.* at 438. The district court granted summary judgment for the employer, and a panel of this Court affirmed. In its opinion, the *Isenbergh* panel criticized the interpretation of *Hicks* established by our *Howard* decision and questioned whether it represents a "correct statement of the law." *Isenbergh,* 97 F.3d at 443. Noting that the *Walker* decision is out of line with the reasoning of *Howard,* the panel said that "[s]ome confusion exists

---

[5]*Trotter v. Board of Trustees,* 91 F.3d 1449 (11th Cir.1996), is not inconsistent with our post-*Hicks* line of precedents properly applying the *Hicks* standard. In *Trotter,* the district court directed a verdict for the defendant at the close of all the evidence. We affirmed, because the defendant had proffered legitimate, nondiscriminatory reasons for its actions, and at the close of all the evidence, those reasons "remain[ed] unrebutted." *Id.* at 1457. In other words, the plaintiffs failed to produce evidence sufficient to allow a reasonable factfinder to disbelieve those reasons.

in the law of this circuit about whether *Hicks* always precludes judgments as a matter of law for employers whenever there is a plausible basis on which to disbelieve the employer's proffered reason for the decision in question." *Isenbergh,* 97 F.3d at 442. The panel concluded its critique of *Howard* by noting its "fear that what *Howard* says about sufficient evidence is a mistake." *Isenbergh,* 97 F.3d at 442.[6]

Although the *Isenbergh* panel opinion criticized our *Howard* decision's application of the *Hicks* standard, the actual *decision* in *Isenbergh* was in harmony with it. As the panel explained, it affirmed the district court's grant of summary judgment in favor of the employer, because its "examination of the record here indicates that Isenbergh failed in creating an issue of fact about the disbelievability of the employer's reason for the hiring decision." *Isenbergh,* 97 F.3d at 443-44. Therefore, the *Isenbergh* holding, as distinguished from its dicta, is consistent with *Hicks,* and with our post-*Hicks* precedents properly applying the *Hicks* standard. *See, e.g., New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1500 (11th Cir.) (Edmondson, J., concurring) (emphasizing that "for law-of-the-circuit purposes, a study of [case law] ought to focus far more on the judicial decision than on the judicial opinion"), *cert. denied,* 510 U.S. 964, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993). Nevertheless, the ideas and critiques advanced by *Isenbergh* 's

---

[6]As we have explained in the previous section of this opinion, *Howard* followed and was entirely consistent with the holdings of our earlier decisions in *Hairston* and *Batey.* The *Isenbergh* opinion mentions *Batey,* but not *Hairston.*

dicta are worthy of some discussion.[7]

First, we believe that a chronological review of our post-*Hicks* case law, *see supra* Part IV.C.2, ought to dispel any "confusion [that] exists in the law of this circuit about whether *Hicks* always precludes judgments as a matter of law for employers whenever there is a plausible basis on which to disbelieve the employer's proffered reason for the decision in question." *Isenbergh,* 97 F.3d at 442.

Second, we hope that the *Isenbergh* opinion will not be read

---

[7]In Part IV.D, *infra,* we conclude that in this case the evidence was insufficient to create a genuine issue of material fact as to one of Meadowcraft's proffered reasons for not promoting Combs. We realize, of course, that that holding makes our response to *Isenbergh* 's dicta itself dicta. Instead of defending our use of dicta with the cliché about it sometimes being necessary to fight fire with fire, we will rely on our recent acknowledgment that "[d]icta can sometimes be useful when it contains a persuasive analysis." *McNely v. Ocala Star-Banner Corp.,* 99 F.3d 1068, 1077 (11th Cir.1996). We leave it to the reader to determine whether that condition is met in this instance.

The concurring opinion in this case states that "[t]he legal principles that control this dispute are familiar and do not require extended explication." It then goes on to list as one of these "familiar" principles the proposition that under the *McDonnell Douglas* framework, the plaintiff may shoulder the burden of convincing the factfinder that a discriminatory reason motivated the employment action "either directly by persuading the factfinder that a discriminatory reason motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." That principle was not so familiar to the *Isenbergh* panel, which went to some length to state its views to the contrary.

We make no apologies for attempting to clarify this area of the law, or at least to illuminate the difference of opinion which exists among some members of this Court concerning it. Unless and until the issue is presented in a dispositive fashion by the facts of some future case, which will provide an opportunity for the en banc court to settle the matter, that is all we can do.

to call into question the binding authority of our *Howard,* *Hairston,* and *Batey* precedents. While recognizing the "ostensible conflict"[8] between *Howard* and *Walker,* the *Isenbergh* opinion states that "[w]e suspect ... that [*Walker v.*] *NationsBank,* not *Howard,* is the more correct statement of the law." *Isenbergh,* 97 F.3d at 443; *see also id.* at 444 ("even if *Howard* is and ought to be the law"). Of course, once a panel of this Court has decided the issue, questions about whether a different view of the matter might be "more correct" are rendered academic insofar as subsequent panels are concerned. Stated somewhat differently, unless and until an issue is addressed by the en banc Court, the Supreme Court, or Congress, the first panel decision on it is, by definition, "more correct" than any subsequent panel decisions. That is what our

---

[8]In a footnote, the *Isenbergh* opinion refers to "the possibility" that the "*ostensible* conflict" between *Walker* and *Howard* might be reconciled on the grounds that *Howard* is a Rule 56 (summary judgment) case, whereas *Walker* is a Rule 50 (judgment as a matter of law) case. *Isenbergh,* 97 F.3d at 443 n. 4. We are unpersuaded by that suggested distinction. Rule 56 and Rule 50 are both concerned with judgment as a matter of law—either before the trial begins or after. *Compare* Fed.R.Civ.P. 56 *with* Fed.R.Civ.P. 50. As the Supreme Court has instructed us, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). *Isenbergh* 's suggested reconciliation of *Walker* and *Howard* would set up differing substantive liability standards for judgment as a matter of law in discrimination cases, depending entirely upon the timing of the related motion. We know of no authority for making such a change in the law, and we believe *Anderson* squarely prohibits it.

The reality of the situation is that *Walker* is irreconcilably out of step with this circuit's precedents. *See Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 n. 4 (11th Cir.1996) (acknowledging that "an apparent conflict exists within this circuit on the issue").

prior precedent rule, upon which much of the rule of law in this circuit depends, is all about.

Because the *Walker* decision was preceded by a number of earlier Eleventh Circuit decisions holding that a jury question is created when a prima facie case is coupled with evidence sufficient to permit a reasonable factfinder to disbelieve an employer's proffered reasons for the challenged action, those earlier decisions remain binding on this Court, and all panels of it. They, and not *Walker* or *Isenbergh,* state what has been and will be the law of this circuit unless and until the en banc Court, the Supreme Court, or Congress changes it. *See, e.g., United States v. Dailey,* 24 F.3d 1323, 1327 (11th Cir.1994); *Clark v. Housing Auth. of Alma,* 971 F.2d 723, 726 n. 4 (11th Cir.1992).

Finally, the *Isenbergh* opinion sets up a *reductio ad absurdum* that bears further examination:

> Assume the following situation by way of example. A defendant sues, alleging he was terminated based on his membership in a protected class. The employer responds with a neutral reason for the hiring decision: the employee was terminated because he was late nine times. After a bench trial, the judge finds, among other facts, that the defendant was late not nine, but seven times. Relying on *Hicks,* however, the judge determines that this case is one where the employer's reason should be disbelieved, but where application of discrimination law to the instant facts (including disbelievability) nonetheless supports a judgment for the employer. This result is the one specifically authorized by *Hicks. See* 509 U.S. at 508-11, 113 S.Ct. at 2748-49.

> The issue in *Howard* and *[Walker v. ]NationsBank* and the issue alluded to in the original panel opinion here is essentially this one: might there be a case where the application of law to facts can proceed in a similar way, but at the summary judgment stage or for the purposes of judgment as a matter of law? To continue with the prior example, suppose the employer offers the nine-latenesses explanation, and the record in a jury trial shows that no reasonable jury could find but that the plaintiff was late only seven times. Assuming the employee made out a bare prima facie case and

nothing else points to discrimination, may the employer—at least, sometimes—be entitled to a judgment as a matter of law even though the jury could (indeed, must) disbelieve the employer's stated reason?  The *Howard* panel, reading *Hicks,* seems to say "no."

We suspect, however, that the answer is "yes"....

*Isenbergh,* 97 F.3d at 442-43.

The real answer is that in the *Isenbergh* opinion's hypothetical, the nondiscriminatory reason proffered by the employer for its actions is excessive *lateness,* not that the employee was late exactly a specific number of times, no more and no less.  In the hypothetical, there is a conflict only between the precise number of times the employer said the employee was late, and the actual number of times the employee was late.  But there is no conflict about the employee's being late an excessive number of times.  The issue upon which judgment as a matter of law turns is whether the employer's proffered nondiscriminatory reason for its action, excessive lateness, may reasonably be disbelieved, not whether the employee was late nine times as opposed to seven.[9]

---

[9]By treating the employer's proffered nondiscriminatory reason as a specific number of "latenesses," instead of excessive lateness, the hypothetical also makes the same sort of analytical error that the Supreme Court identified and addressed in *Hicks* itself:

> These statements imply that the employer's "proffered explanation," his "stated reasons," his "articulated reasons," somehow exist apart from the record—in some pleading, or perhaps in some formal, nontestimonial statement made on behalf of the defendant to the factfinder. ("Your honor, pursuant to *McDonnell Douglas* the defendant hereby formally asserts, as its reason for the dismissal at issue here, incompetence of the employee.")  Of course it does not work like that.  The reasons the defendant sets forth are set forth "through the introduction of admissible evidence."  *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

In the hypothetical set up in the *Isenbergh* opinion, there is no evidence to discredit the employer's explanation that the defendant was fired for excessive lateness; the defendant's reason for its action remains unrebutted. So, the employer would be entitled to judgment as a matter of law under *Hicks,* 509 U.S. at 515-18, 113 S.Ct. at 2751-53 (discussing plaintiff's burden of discrediting the defendant's explanations), and under all of our prior decisions, including *Hairston, Batey,* and *Howard.*

### 4. The Post-Hicks Case Law in Other Circuits

Eight other circuits have considered the issue and interpreted *Hicks* to mean exactly what we have interpreted it to mean—that evidence sufficient to discredit a defendant's proffered nondiscriminatory reasons for its actions, taken together with the plaintiff's prima facie case, is sufficient to support (but not require) a finding of discrimination. That is the law not only in this circuit, but also in the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and District of Columbia Circuits. *See, e.g., EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir.1994) ("A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus permits the ultimate inference of discrimination."); *Sheridan v.*

---

*Hicks,* 509 U.S. at 522-23, 113 S.Ct. at 2755 (emphasis omitted).

Because the employer is required to proffer its explanation not by a mere assertion, but by the introduction of admissible evidence, the hypothetical's assumption that the employer somehow "offers the nine-latenesses explanation" when the overwhelming weight of the evidence is that the employee was late only seven times, is unrealistic. As the Supreme Court said in *Hicks,* "[I]t does not work like that." *Id.* at 523, 113 S.Ct. at 2755.

*E.I. DuPont De Nemours & Co.,* 100 F.3d 1061, 1066-67 (3d Cir.1996) (en banc) ("[T]he elements of the prima facie case and disbelief of the defendant's proffered reasons are the threshold findings, beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.");[10] *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) (considering two questions at summary judgment: (1) the prima facie case and (2) "whether [the plaintiff] has shown that there is a genuine dispute of material fact about [the defendant's] proffered explanation for the discharge"); *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir.1994) ("[T]he only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may* draw, *provided* that the jury finds the employer's explanation "unworthy' of belief.") (emphasis in original); *Perdomo v. Browner,* 67 F.3d 140, 146 (7th Cir.1995) ("The district court found Perdomo's [direct] evidence of racial discrimination unpersuasive, but ... such evidence is not required: the trier of fact is permitted to infer discrimination from a finding that the employer's proffered reason was spurious."); *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1110 (8th Cir.) ("The elements of the plaintiff's prima facie case are thus present and the evidence is sufficient to allow a

---

[10]The Third Circuit's en banc opinion in *Sheridan* is a particularly illuminating and thorough study of the issue, especially its discussion of the justification for the interpretation of *Hicks* that has been adopted by a majority of the circuits. *See* 100 F.3d at 1068-72.

reasonable jury to reject the defendant's non-discriminatory explanations. The "ultimate question' of discrimination must therefore be left to the trier of fact to decide."), *cert. denied,* --- U.S. ----, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993) ("If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed."); *Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C.Cir.1995) ("According to *Hicks,* a plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered nondiscriminatory reasons; at that point, the factfinder, if so persuaded, may infer discrimination.").

Of course, the holdings of other federal courts of appeals on the issue do not determine the law of this circuit. However, in considering whether the rule established in our precedents "ought to be the law," it is of no small moment that eight of the ten other circuits that have considered the question are in agreement with our interpretation of *Hicks.* Thus far, only the First and Fifth Circuits have issued opinions expressing a contrary view, and in neither opinion was that expression actually a holding.

In *Woods v. Friction Materials, Inc.,* 30 F.3d 255 (1st Cir.1994), the First Circuit *stated* that proof of pretext will not always shield a plaintiff from summary judgment, *id.* at 260 n. 3, but *held* only that the defendant in that case was entitled to summary judgment because the plaintiff had presented "no evidence

... to rebut [the defendant's] assertion that those hired were more qualified," *id.* at 262. Of course, that holding—as distinguished from the dicta—is entirely consistent with the law of our circuit and the eight other circuits we have cited.

In *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989 (5th Cir.1996) (en banc), the Fifth Circuit affirmed judgment in favor of an employee in an age discrimination case, holding that the evidence was sufficient to allow a rational jury to find that age discrimination was the true reason the employer discharged the employee. That holding itself is no problem, but the *Rhodes* opinion also contains dicta regarding the *Hicks* rule that is arguably inconsistent with the law of this circuit and eight others. Although the *Rhodes* opinion states that under *Hicks,* "evidence of pretext will permit a trier of fact to infer that the discrimination was intentional," *id.* at 993, it also states that "[i]t is unclear ... whether the [Supreme] Court intended that in all such cases in which an inference of discrimination is permitted a verdict of discrimination is necessarily supported by sufficient evidence," *id.* Additionally, the opinion states, "[w]e are convinced that ordinarily such verdicts would be supported by sufficient evidence, but not always." *Id.*

The fact remains that the contrary dicta in the First and Fifth Circuit decisions are just that: dicta. We have not found any holding of any circuit inconsistent with the holding of our *Hairston, Batey, Howard, Cooper-Houston* line of decisions, and at least eight other circuits have reached the same holding.

**5. The Hicks Standard is not a "Dramatic and Hurtful-to-Employers Change in the Law"**

We close out our discussion of the *Isenbergh* dicta by answering its charge that the *Howard* line of decisions represents a "dramatic and hurtful-to-employers change in the law" that the Supreme Court did not intend or command in the *Hicks* decision, *see Isenbergh*, 97 F.3d at 443. Not only does *Hicks* command the rule recognized in our *Howard* line of decisions, but that rule is a rational, common-sense consequence of the unique evidentiary framework that has been in place for over twenty years—ever since the Supreme Court decided *McDonnell Douglas*.

Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case, and the defendant employer proffers no nondiscriminatory reasons for the action, it is settled that the plaintiff wins judgment as a matter of law. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093-94. Hopefully, no one would suggest that in such a case the *defendant* might be entitled to a judgment as a matter of law. Yet, those who argue against the *Howard* line of decisions are advocating a position that is not much more logically defensible than that. Given the establishment of a prima facie case in each, the case in which an employer puts forward nothing but false reasons is too analytically close to the case in which the employer puts forward no reasons for the law to permit judgment as a matter of law to be entered for opposite sides in the two cases. Stated somewhat differently, why should the law reward so handsomely mendacity in legal proceedings?

The upshot of *Hicks* and the *Howard* line of decisions is that a defendant cannot win judgment as a matter of law merely by proffering nothing but false nondiscriminatory reasons for its

actions.  The justification for that rule is closely analogous to the justification for the mandatory presumption of discrimination that initially accompanies a plaintiff's prima facie case.  As then-Justice (now Chief Justice) Rehnquist pointed out long before the *Hicks* decision, we require a defendant, on pain of losing the case, to come forward with explanations for its actions once a plaintiff has made out a prima facie case of discrimination, "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978).  Justice Rehnquist further explained:

> [W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting.  Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race.

*Id.*

As the Third Circuit, sitting en banc, recently observed, "The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire."  *Sheridan v. E.I. DuPont De Nemours & Co.,* 100 F.3d 1061, 1071 (3d Cir.1996) (en banc).  Frequently, acts of discrimination may be hidden or subtle;  an employer who intentionally discriminates is unlikely to leave a

written record of his illegal motive, and may not tell anyone about it. "There will seldom be "eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Because of those realities, plaintiffs are often obliged to build their cases entirely around circumstantial evidence. The unique proof problems that accompany discrimination cases are the genesis of the unique solutions that the Supreme Court has devised for those cases in *McDonnell Douglas* and its progeny. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 271, 109 S.Ct. 1775, 1801-02, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) ("[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by.").

A defendant who puts forward only reasons that are subject to reasonable disbelief in light of the evidence faces having its true motive determined by a jury. But we fail to see how that result is particularly "hurtful-to-employers," as *Isenbergh* suggests, 97 F.3d at 443. The Third Circuit recently explained:

> We routinely expect that a party give honest testimony in a court of law; there is no reason to expect less of an employer charged with unlawful discrimination. If the employer fails to come forth with true and credible explanation and instead keeps a hidden agenda, it does so at its own peril. Under those circumstances, there is no policy to be served by refusing to permit the jury to infer that the real motivation is the one that the plaintiff has charged.

*Sheridan,* 100 F.3d at 1069.

Of course, the law is that the jury is not *required* to make the inference of discrimination that *Hicks* permits upon rejection of the employer's proffered nondiscriminatory reasons. "That the

employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the factfinder to answer...." *Hicks,* 509 U.S. at 524, 113 S.Ct. at 2756. In answering that question, the jury must perform its traditional duties of assessing the credibility of witnesses through observation of trial testimony and of weighing the evidence—tasks peculiarly within the province of the jury. *E.g., Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1559 (11th Cir.1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). In performing those traditional duties, the jury must measure the strength of the permissible inference of discrimination that can be drawn from the plaintiff's prima facie case along with the evidence that discredits the employer's proffered explanations for its decision. Even if the jury concludes that all the employer's proffered explanations are unworthy of belief, it may still remain unpersuaded that discrimination was the real reason for the employer's decision. That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case.

When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the

employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan,* 100 F.3d at 1072 (citation and internal quotation marks omitted); *see also Walker,* 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

*D. Application of the Legal Standard to the Evidence in this Case*

Having reviewed the legal principles that govern this case, we now proceed to apply those principles to the evidence adduced at trial. In doing so, we consider the entire record in the light most favorable to Combs, for the limited purpose of ascertaining whether there was sufficient evidence for Combs to withstand Meadowcraft's motions for judgment as a matter of law. Our task, like that of the district court, is a highly focused one. We must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered

nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994).

As previously noted, Meadowcraft proffered evidence in support of three legitimate, nondiscriminatory reasons for its decision to promote Walker, instead of Combs, to the position of welding supervisor. Those reasons were: (1) Walker's superior welding experience; (2) the recommendations of supervisors Lane and Anderson; and (3) Walker's superior supervisory experience. By meeting its burden of producing legitimate reasons for its decision, Meadowcraft successfully eliminated the presumption of discrimination that initially accompanied Combs' prima facie case.[11]

---

[11]To establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted. *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989). Although Meadowcraft contends that we should revisit whether Combs successfully established a prima facie case of discrimination, the Supreme Court has instructed otherwise:

> [W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII.

*United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (footnote omitted). "When the trier of fact has before it all the evidence needed to decide the ultimate issue of whether the defendant intentionally discriminated against the plaintiff, the question of whether the plaintiff properly made out a prima facie case "is no longer relevant.' " *Richardson v. Leeds Police Dep't,* 71 F.3d 801, 806 (11th Cir.1995) (quoting *Aikens,* 460 U.S. at 715, 103

Provided that the record evidence would permit a reasonable factfinder to reject each of Meadowcraft's proffered explanations for its decision, the case properly was submitted to the jury for a decision on the ultimate question of intentional discrimination. We now consider the evidence related to each of the three proffered nondiscriminatory reasons for Meadowcraft's decision to promote Walker instead of Combs.

### 1. Welding Experience

The parties agree that Walker had welding experience and that Combs did not. Combs concedes that "some difference in the two existed" with respect to welding experience, which we take to mean that Walker was more qualified as a welder than Combs. Nonetheless, Combs contends that the jury reasonably could have concluded that Walker's welding experience did not actually motivate Meadowcraft's promotional decision, because Walker was

---

S.Ct. at 1482); *see also Wall v. Trust Co.,* 946 F.2d 805, 809-10 (11th Cir.1991) (same).

Because Meadowcraft failed to persuade the district court to dismiss Combs' lawsuit for lack of a prima facie case, and responded to Combs' proof by offering evidence to explain why Combs was rejected in favor of Walker, the factfinder was then required to "decide whether the rejection was discriminatory within the meaning of Title VII." *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481. Of course, the factfinder could conclude that the decision was discriminatory only if it permissibly could disbelieve Meadowcraft's proffered nondiscriminatory reasons for its decision. Therefore, on appeal—as on Meadowcraft's motion for judgment as a matter of law—the question of whether Combs "properly made out a prima facie case "is no longer relevant,' " *Richardson,* 71 F.3d at 806 (11th Cir.1995) (quoting *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482). While we consider the *evidence* submitted by Combs in connection with his prima facie case in evaluating whether a reasonable jury could disbelieve Meadowcraft's proffered nondiscriminatory reasons for its actions, we do not revisit the existence of the prima facie case itself.

transferred to the packing department—where welding experience is irrelevant—almost immediately after his promotion.

Viewing the record evidence in the light most favorable to Combs, we agree that a reasonable jury could have concluded that Meadowcraft's promotional decision was not actually motivated by Walker's concededly superior welding experience.  At trial, John Hart, supervisor of the Wadley plant, testified:  "Fred was packing supervisor when I hired him.  He wasn't in the weld area, he was a packing supervisor."  Although Meadowcraft contends that Walker's stint in the packing department lasted only a short time, that contention is undermined by the record.  George Anderson, one of the welding department supervisors, testified about the duration of Walker's packing assignment as follows:  "Fred made a good supervisor.  When he was first hired, I think he spent a couple of weeks in welding, then he was moved to packing for a year or so.  Now he's back over there with the men in the welding, and he's doing an outstanding job."

When viewed in the light most favorable to Combs, the foregoing evidence would permit a reasonable juror to conclude that Walker was hired to work as a *packing* supervisor and that he spent at least a year in that position before being transferred to the welding department.  Because *welding* experience is not relevant to supervisory work in the packing department, a reasonable juror would be permitted to conclude that Walker's superior welding experience was not a factor that actually motivated Meadowcraft's decision to promote Walker instead of Combs.

### 2. Supervisory Recommendations

Meadowcraft contends that its decision to promote Walker instead of Combs was based on the recommendations of welding department supervisors George Anderson and Edward Lane, both of whom are black. According to Meadowcraft, those supervisory recommendations favored Walker, because Walker was endorsed by both supervisors, whereas Combs was endorsed only by Lane. That view of the circumstances is supported by the testimony of Plant Supervisor Hart. At trial, Hart testified: "George and Edward both recommended Fred Walker for the job. They were more familiar with Fred Walker than I was. I had never spoken to Fred Walker until I interviewed him." Hart further testified that "[a]fter George and Edward came to me and recommended him, I did pull his resume." Additionally, Hart testified that neither Anderson nor Lane ever recommended that Combs be promoted to supervisor.

Meadowcraft's view of the evidence is also supported by Anderson's testimony. At trial, the following exchange took place on direct examination of Anderson:

Q. Did you have anything to do with Mr. Walker's promotion to supervisor?

A. Well, one day Fred come up to the office and talked with me and Mr. Lane about do they think we have any chance of progressing himself in the plant. He told him to send out a resume. He did, and I sort of recommended him to John [Hart] that, you know, I have nothing to do with the hiring, but I did recommend Fred to be a supervisor.

Q. Why did you do that?

A. Well, I worked with Fred down there on the floor. He came in and he got into welding, and I already knew that he had used to be a principal, and I knew he worked with people. At that time we was needing supervisors. We was going to start up a second shift and we'd have to get some supervisors, and I hadn't thought about him until he came and talked with us that day. I figured he'd be a good candidate.

Q. And you communicated that to Mr. Hart?

A. Yes.

Q. Did you ever recommend Darrell Combs to be supervisor?

A. No, I didn't.

Although Hart's and Anderson's testimony supports Meadowcraft's proffered nondiscriminatory explanation for promoting Walker instead of Combs, Edward Lane's testimony paints a different picture of the supervisory assessments of Walker and Combs. According to Lane's testimony on direct examination, he recommended Combs for the supervisor position, and Anderson agreed with Lane's evaluation of Combs' qualifications for the position:

Q. Now, were you there when Mr. Combs sought a position in the office?

A. Yes, ma'am, I was.

Q. And tell the ladies and gentlemen of the jury what you know about that.

A. At the time it was for other positions, supervision positions were open. The man that I was working for by the name of Mr. John Hart, knew of such a position, and we made a recommendation for him to be a supervisor.

Q. You made a recommendation for who to be a supervisor?

A. This gentleman in the courtroom by the name of Darrell Combs.

Q. To whom did you make that recommendation?

A. To Mr. John Hart.

Q. Now, at the time you made that recommendation, was there any other individuals discussed?

A. Yes, ma'am, there was. A gentleman by the name of Mr. Fred Walker.

Q. Now, when you made this recommendation about Mr. Combs, it was being of supervisory material, is that correct?

A. Yes, ma'am, I did.

Q. Who else was—Was it at a meeting you made that recommendation?

A. Yes, ma'am.

Q. Who else was at that meeting?

A. Mr. George Anderson.

Q. Did Mr. Anderson go along with your assessment that Mr. Combs was qualified to be a supervisor?

A. Yes, he did.

Q. Did he express that to Mr. Hart?

A. Yes, ma'am, he did.

In addition to testifying that both he and Anderson supported Combs for the supervisory position, Lane repeatedly denied recommending Walker for the job:

Q. Did you recommend Fred Walker be promoted to supervisor, and did you make that recommendation to John Hart?

A. No, sir, I made the recommendation for Darrell Combs.

....

Q. All I want you to tell me, I don't mean to cut you off again, but I want you to tell me what you said.

A. I'm telling you direct as to what I directed to the gentleman right there, Darrell Combs. That's the recommendation I made to be supervisor.

Q. I got that. You recommended Darrell Combs.

A. Yes, sir.

Q. Did you, or did you not, recommend Fred Walker?

A. No, sir, I did not.

Q. You did not?

A. No, sir.

When confronted with his deposition testimony, however, Lane admitted that he told Hart that Walker would make a good supervisor, but indicated that he was pressured to do so:

Q. So you did tell John Hart that Fred Walker would make a good supervisor.

A. Yes, sir, I had to.

Q. All right. Tell us about that.

A. The reason I had to, sir, was we was in a meeting.... And John was the manager. If I would have said yes or no, still John was going to pick who he wanted.

Q. I'm not trying to get at what Mr. Hart was going to do with your recommendation, I'm trying to get at what your recommendation was.

A. Yes, sir. We all agreed.

To summarize, the evidence is in conflict about the communications that Anderson and Lane made to Hart about the relative merits of Walker and Combs for the supervisory position. It is undisputed that Anderson recommended Walker, but there is conflicting testimony about whether he also endorsed Combs. Similarly, Lane's testimony clearly indicates that he recommended Combs, but there is conflicting testimony about whether he also endorsed Walker, or merely begrudgingly agreed at a meeting with Hart and Anderson that Walker would be a good supervisor. Viewing the evidence in the light most favorable to Combs, a reasonable jury could conclude that the supervisory recommendations of Anderson and Lane did not clearly point to Walker or Combs as the preferable candidate and that, therefore, those supervisory recommendations did not actually motivate Meadowcraft's decision to promote Walker instead of Combs.

### 3. Supervisory Experience

Meadowcraft's third proffered nondiscriminatory reason for promoting Walker instead of Combs is that Walker had better experience as a supervisor, both in quality and quantity. On that

point, it is undisputed that prior to joining the workforce at Meadowcraft, Walker worked for over twenty years as a school administrator and had supervised others throughout most of his career. Walker's testimony about his supervisory experience, which is entirely undisputed, is as follows:

Q. [Y]ou say, you became principal with Woodland High School in 1974?

A. About January of 1974, immediately after New Year's.

Q. And did you supervise people?

A. Yes, sir.

Q. How many people would you say you supervised?

A. Approximately forty-seven or forty-eight teachers, thirty-five to thirty-six bus drivers, thirteen or fourteen lunchroom personnel, and custodian type workers. Probably around a hundred or more people.

....

Q. All right. How long were you principal at Woodland?

A. Seven years.

Q. And then what did you do?

A. I received a promotion to the superintendent's office at the county courthouse, and I joined the superintendent's staff as supervisor of instruction.

....

Q. How many schools did you all have jurisdiction over?

A. We had four high schools, two middle schools and one junior high school at that time. Also a share of the vocational trade school.

....

Q. All right. How long were you supervisor of instruction?

A. Six years.

....

Q. So after the superintendent's office, you went to Rock Mill?

A. Yes, sir.

Q. And Rock Mill is a—what type of school is that?

A. It's a K through 8 junior high school.

Q. All right.  How many students were there?

A. Approximately at that time 350 students.

Q. And you had responsibility for those students?

A. Yes, sir.

Q. How many teachers were there?

A. At that time probably sixteen or seventeen on staff.

Q. Did you supervise any other workers?

A. My custodial workers, my lunchroom workers and my bus drivers.

Q. Okay. And you were principal of Rock Mill beginning in '86 until what year?

A. 1991.

By contrast, Combs' testimony at trial established that his own supervisory experience was extremely limited:

Q. Now, you had never really had any power to discipline, or counsel, or fire anybody while you were out there [in the scanning department], had you?

A. On that job?

Q. Yes, sir.

A. No, sir.

Q. While you were at the company at all?

A. No, sir.

Q. And you never really supervised anyone, other than showing the people how to use the scanning guns for over those two or three weeks?

A. Right.

Q. Let's look at your work experience, if we can.  Prior to the

company, okay, you had been a grocery store bagger?

A. Yes, sir.

Q. You had been a resident manager at an apt [apartment] complex, right?

A. Yes, sir.

Q. Had you supervised anybody there?

A. Supervise? Well, I used to have little teenagers working for me when I was doing some of my maintenance duties, but as far as—like as far as like company people, no.

....

Q. So at the point of 1992 when you're working for Mr. Hart on this assignment he had for you, you hadn't really ever supervised anybody except those teenagers you told me about, is that right?

A. That's right.

Thus, the evidence was undisputed that Walker had substantial supervisory experience, while Combs had virtually none. Nonetheless, Combs contends that he put on sufficient evidence to permit a reasonable jury to disbelieve that Meadowcraft's decision to promote Walker was motivated by Walker's supervisory experience. Combs points to the fact that, prior to joining Meadowcraft, Walker was forced to resign his position as principal of Rock Mills Junior High School after acknowledging that he had misused approximately $5,000 of school funds. Combs' theory seems to be that Walker's substantial supervisory experience is sufficiently undermined by the circumstances surrounding his resignation as principal that a reasonable juror could disbelieve Meadowcraft's explanation that it promoted Walker instead of Combs because Walker had more and better supervisory experience. We disagree.

Financial impropriety is a serious matter, but there is no

evidence in the record that either Walker or Combs were considered for a position that involved the custody or management of company funds. Walker and Combs were contenders for a position that involved managing people, not money. If Meadowcraft had contended that it promoted Walker instead of Combs because it believed Walker would be a more trustworthy financial manager, the evidence of Walker's misuse of funds clearly would have been sufficient to permit a reasonable jury to disbelieve Meadowcraft's proffered explanation. However, Meadowcraft never proffered that as a reason. Instead, Meadowcraft proffered evidence that the reason it promoted Walker was that he had years of extensive supervisory experience that Combs did not.

In relying on Walker's financial improprieties to undermine Meadowcraft's explanation that it based its promotion decision on Walker's superior supervisory experience, Combs confuses *disagreement* about the wisdom of an employer's reason with *disbelief* about the existence of that reason and its application in the circumstances. Reasonable people may *disagree* about whether persons involved in past financial improprieties should be made supervisors, but such potential disagreement does not, without more, create a basis to *disbelieve* an employer's explanation that it in fact based its decision on prior non-financial supervisory experience. Meadowcraft's decision to promote Walker instead of Combs may seem to some to be bad business judgment, and to others to be good business judgment, but federal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish that an employer's

proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.

To summarize, Combs failed to produce evidence sufficient to permit a reasonable factfinder to disbelieve Meadowcraft's proffered nondiscriminatory explanation that it promoted Walker instead of Combs because Walker had superior supervisory experience. Because of that failure, the district court should not have permitted the case to go to the jury. Meadowcraft was entitled to judgment as a matter of law.

### V. CONCLUSION

A plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions. In this case, however, Combs failed to produce evidence sufficient to permit a reasonable juror to reject as spurious Meadowcraft's explanation that it promoted Walker instead of Combs to supervisor because Walker had superior supervisory experience.

Therefore, we REVERSE the entry of judgment in favor of Combs, and we REMAND the case for entry of judgment in favor of Meadowcraft.

BLACK, Circuit Judge, specially concurring:

Although I agree with the majority opinion, I would confine the discussion to those legal concepts directly implicated by the instant facts. The legal principles that control this dispute are

familiar and do not require extended explication. Under the *McDonnell Douglas* framework, a presumption of discrimination arises if a Title VII plaintiff succeeds in establishing a prima facie case. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The defendant may rebut the presumption by articulating a legitimate, nondiscriminatory reason for the challenged employment decision. *Id.* at 254-55, 101 S.Ct. at 1094-95. At that point, the presumption disappears from the case, leaving the plaintiff with the ultimate burden of convincing the factfinder that a discriminatory reason more likely than not motivated the employment action. *Id.* at 256, 101 S.Ct. at 1095. The plaintiff may shoulder this burden either directly by persuading the factfinder that a discriminatory reason motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.*

The majority opinion properly applied these fundamental principles when it determined that Combs failed to adduce sufficient evidence to withstand Meadowcraft's motions for judgment as a matter of law. The evidence offered by Combs would not permit a reasonable trier of fact to find either that a discriminatory reason motivated Meadowcraft or that the legitimate, nondiscriminatory reasons proffered were not worthy of belief. Undisputed evidence established that Walker had superior managerial experience, and Combs offered no evidence tending to undermine the veracity of Meadowcraft's claimed reliance on this factor.