[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2001
THOMAS K. KAHN
CLERK

No. 00-14272

D.C. Docket No. 97-01243-CV-TWT-1

CHESTER L. LAMBERT, III,
WILLIAM E. MOWREY, et. al.,

Plaintiffs-Appellees,

versus

FULTON COUNTY, GEORGIA,
ROBERT J. REGUS, et. al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Georgia

**(June 6, 2001)**

Before BLACK and MARCUS, Circuit Judges, and HANCOCK[*], District Judge.

HANCOCK, District Judge:

---

[*] Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Fulton County, Georgia appeals final jury verdicts awarding separately to three plaintiffs, Chester L. Lambert, William E. Mowrey, and James M. Heath, back pay and $300,000 compensatory damages on their separate Title VII claims against Fulton County asserting that disparate discipline was administered to them by Fulton County because they are white.  Robert J. Regus appeals final jury verdicts awarding separately to the three plaintiffs $50,000 compensatory damages and $225,000 punitive damages on their respective 42 U.S.C. § 1983 claims against Regus asserting that Regus denied them their Fourteenth Amendment right to equal protection and their rights under 42 U.S.C. § 1981.  Michael Cooper appeals final jury verdicts awarding separately to the three plaintiffs $50,000 compensatory damages and $225,000 punitive damages on their respective 42 U.S.C. § 1983 claims against Cooper asserting that Cooper denied them their Fourteenth Amendment right to equal protection and their rights under 42 U.S.C. § 1981.

Appellants Fulton County, Regus, and Cooper raise two common issues on appeal, sufficiency of the evidence to support each verdict and whether the district court erred in denying motions for a new trial.  Appellants Regus and Cooper also raise two additional issues common to them, whether they were entitled to qualified immunity and whether the district court erred in denying their motions

for judgment as a matter of law on the punitive damages claims or, alternatively, failing to reduce the amount of punitive damages awarded. Because there was sufficient evidence to support the several jury verdicts, including the amount awarded as punitive damages, and because Regus and Cooper were not entitled to qualified immunity, we affirm.

## I. Factual Background

Appellants-Defendants are Fulton County, Georgia; Robert J. Regus, who at all relevant times was County Manager for Fulton County with supervisory authority over all employees of Fulton County; and Michael G. Cooper, who at all relevant times was Director of Fulton County's Department of Contract Compliance and Equal Employment Opportunity ("EEO office") with responsibility for investigating discrimination complaints and recommending corrective action. Cooper reported directly to Regus. At all relevant times, Appellees-Plaintiffs Chester Lambert, William Mowrey and James Heath were all employees of Fulton County working at the Big Creek Water Treatment Facility. As discussed below, Appellees alleged that the Appellants unlawfully discriminated against them by disciplining them on the basis of their race (white). Regus is white; Cooper is black.

Appellee Lambert began his employment with Fulton County in 1975, and

during 1995 and 1996, the relevant time frame for this case, he held the position of Civil Engineer III and was responsible for the North Fulton water system and maintenance. Appellee Mowrey began his employment with Fulton County in 1989 and in 1995 was Area Construction Supervisor, Operations Manager and was responsible for sewer lines in the South Fulton and North Fulton waste water treatment facilities. Appellee Heath began his employment with Fulton County in December of 1988, and in 1995 he became acting supervisor at Big Creek. By virtue of the positions they held, all Appellees were responsible for responding to employee complaints of racial harassment. In 1995, Lambert reported to Frank Bockman (the Deputy Director of the Department of Public Works), Mowrey reported to Lambert, and Heath reported to Mowrey.

The crux of Appellees' allegations is that race was a factor in the disciplining of Appellees for failing to effectively deal with a hostile work environment at Big Creek. The Appellees admitted at trial that a hostile work environment existed at Big Creek because of numerous racial incidents that occurred there in 1995 and 1996 which resulted in formal charges of discrimination being filed by two Big Creek employees on January 26, 1996 with the Equal

Employment Opportunity Commission ("EEOC").[1]  From March until May of 1996, Cooper and another Fulton County EEO office member were in charge of conducting an investigation on behalf of the EEO office and responding to the EEOC charges filed.  Cooper conducted interviews and investigated the situation, and on April 29, 1996, submitted his first report to Regus.  In that report, Cooper concluded that the Department of Public Works was guilty of allowing racial discrimination to occur and he recommended disciplining supervisors and management officials under Article 21 of the Fulton County Personnel Regulations.  On May 1, 1996, the County Attorney for Fulton County issued a letter to Cooper and Regus criticizing Cooper's April 29 report as "replete with hearsay" and finding that no action could be taken on the basis of that report "without violating the rights of various employees of Fulton County."  After

---

[1] The incidents included the following.  On August 21, 1995, a black employee at Big Creek, David Parker, complained by memorandum about supervisors using racial slurs to and about subordinate employees. On September 14, 1995, Parker found a notebook containing drawings of confederate flags, flames, a hangman's noose, a hooded Klansman figure, and racial slurs in a white crew leader's truck at Big Creek.  On October 5, 1995, Parker reported that a racial slur had been written on a break room wall at Big Creek. In January of 1996, two more racial slurs appeared on the break room wall and door at Big Creek.  In early 1996, a black employee at Big Creek, Arthur Glass, complained that a white employee had referred to him as a "sorry ass black man." On January 26, 1996, Parker and Glass filed charges of discrimination with the EEOC.  On February 16, 1996, another racial slur was found on the break room wall at Big Creek and on February 19, 1996, a letter and envelope containing racial slurs were found on Parker's county vehicle.  On February 22, 1996, Parker and Glass found the brake lines on their county vehicles cut.  Parker and Glass both reported to Curtis Brown (black), who was supervised by Heath.

reviewing the County Attorney's letter, Regus asked Cooper to provide another report to include names of the employees who were responsible for the racial harassment.

On May 3, 1996, Cooper submitted a revised report accusing six white employees, identified by race and name and including the three Appellees, of various policy violations including engaging in discrimination and allowing discrimination to continue in the Department of Public Works. Cooper's May 3 report recommended "immediate disciplinary action" but did not advocate that any particular individuals be disciplined. After "painstakingly analyz[ing]" Cooper's May 3 report, Robert Regus, in a letter dated May 23, 1996, expressed concern that Cooper's "conclusions were not substantiated by facts, and efforts were not made to interview all persons who may have knowledge of the allegations." The May 23 letter also criticized Cooper's "conscious decision . . . to selectively include certain facts while excluding other facts" including "steps taken by Mr. Bockman and others to respond to complaints of racial harassment at Big Creek." Regus also expressed concern that Cooper behaved in an "unprofessional, rude, accusatory [manner] and demonstrated personal bias" when asked to defend his report during a meeting held on May 15, 1996 between Cooper, Regus, Bockman, and the County Attorney. During the course of that meeting, Cooper told Bockman that

6

"he was looking at [the situation] from a white man's perspective and that he (Bockman) should look at it from the perspective of a black man who has had to work for a white man all of his life." The May 23 letter criticized Cooper for being "emotionally involved" and issued an official warning and reprimand to Cooper concerning the performance of his duties. Cooper was directed to complete a course of training in investigation and report writing. Cooper admitted at trial that he left out certain relevant facts, including the Appellees' written statements detailing their efforts to stop the hostile environment at Big Creek.[2] On the same day that Cooper submitted his May 3 report, Cooper filed a Position Statement on behalf of Fulton County in response to the charges filed on January 26, 1996 with the EEOC . The Position Statement stated that the Appellees "took all reasonable

---

[2] Appellees took the following measures to combat the hostile environment. Heath initiated documentation including a memorandum dated August 24, 1995 to Lambert responding to an employee's complaints about possible discrimination and memoranda dated March 12, 1996 and March 16, 1996 to Mowrey regarding the Big Creek situation. Lambert communicated with Mozell Acey (the Human Resources coordinator who reported to Bockman and interacted with the EEO office in responding to discrimination complaints) via memorandum dated February 16, 1996 and with Mowrey via memorandum dated February 22, 1996 regarding the two EEOC complaints filed in late January of 1996. In a memorandum to Acey dated February 28, 1996, Mowrey documented the sequence of events leading up to the filing of the EEOC charges. Heath copied and preserved the notebook with the drawings and racial slurs, contacted the police about the situation, and turned the notebook over to the police for investigation after he had Bockman and Acey review it. Heath and Mowrey obtained written statements from employees who admitted to writing in the notebook and subsequently took disciplinary action against those employees. Mowrey, Heath, and Lambert wrote chronologies documenting the racial incidents at Big Creek. Mowrey and Heath, following Lambert's orders, conducted meetings with the Big Creek employees several times a week to discuss employee concerns about the environment at Big Creek. Heath and Mowrey also requested surveillance cameras and security fences and monitored the premises at night.

7

steps necessary to discover the perpetrators and to protect the Charging Party from any alleged racially hostile environment." Cooper agreed at trial that the Position Statement was contradictory to the accusations in his May 3 report.

From March until May of 1996, Bockman and Mozell Acey (black)[3] conducted a contemporaneous investigation into the incidents at Big Creek on behalf of the Department of Public Works. Bockman and Acey interviewed all relevant witnesses and held meetings with employees to instruct them not to engage in racial or other harassment and to report harassment to management. The investigation did not conclusively reveal who was responsible for the racial harassment. Acey completed a report and expressed concern that managers and supervisors had no clear guidelines for handling an inflammatory situation; Acey recommended training for all employees on workplace diversity. Acey did not find fault with the Appellees' actions and did not recommend disciplinary action. After reviewing Acey's findings, Regus directed Bockman to prepare a report and with the help of Acey, Bockman submitted a report on May 14, 1996 containing documentation of his investigation and the Appellees' responses to the racial incidents. Bockman's report catalogued evidence refuting Cooper's allegations,

---

[3] As noted earlier, Acey was the Human Resources Coordinator who reported to Bockman and interacted with the EEO office in responding to discrimination complaints.

criticized both of Cooper's reports, and requested that Cooper withdraw his May 3 memorandum. Bockman's report expressed concern about Cooper's "false accusations" and found no fault on the part of the Appellees.

On May 13, 1996, Regus forwarded Cooper's May 3 report to the Fulton County Board of Commissioners and stated that he had "reviewed" the memorandum with the County Attorney, but Regus did not comment on the substance of Cooper's report. Regus did not forward Bockman's report to the Board. Regus informed the Commissioners that the media had requested a copy of the report and that at 5:00 p.m. on May 13, Cooper's report would be released to Channel 2 in accordance with provisions of the Open Records Act. The Appellees were allowed to submit written responses to Cooper's final May 3 report. On May 17, 1996, Bockman forwarded to Regus responses from Mowrey, Heath, and Lambert in order to "make certain [Regus] was aware of [their] responses."[4]

By letters from Regus dated May 16, 1996, Appellees were disciplined for failing to effectively deal with the situation at Big Creek as follows: Lambert was discharged; Mowrey was suspended for five days and demoted to Construction Inspector, with no resulting pay decrease; Heath was demoted to Sewer System

---

[4] These responses were forwarded by Bockman the day after Regus imposed subject discipline on Appellees.

Worker 2, with no resulting pay decrease. A May 17, 1996 inter-office memorandum from Regus to Bockman documented that Bockman refused to take any disciplinary action against Lambert, Heath, or Mowrey, refused to sign the disciplinary letters dated May 16, 1996, and recommended only supervisory training for Lambert, Heath, and Mowrey.[5] Regus testified that he did not rely on Cooper's report in determining the disciplinary action to be taken against Appellees and stated that he knew that Cooper's report was replete with inaccuracies and that Cooper himself was "biased." In disciplining Appellees, Regus followed the same County disciplinary policies that Cooper recommended; Regus had not previously used those policies in his career as County Manager. Appellees appealed their discipline to the Fulton County Personnel Board and the board found that the discipline imposed against the Appellees was job-related, but they reduced the Appellees' discipline to 30-day suspensions.

The Chairman of the Board of Commissioners testified that he told the media that any County supervisors who did not take action on the EEOC complaints should be fired. The Chairman testified that the Board was concerned about the media attention and pressured Regus to act on the charges. Cooper also

---

[5] Bockman agreed to discipline two other non-supervisory employees who were found to be responsible for some of the racial incidents.

spoke to the media on a television news program and informed the public that, "make no mistake about it," supervisors and managers would be disciplined. Regus issued a press release on May 17, 1996 that stated in pertinent part, "After receiving a report for Mr. Michael Cooper . . . and after having received a response from Mr. Frank Bockman . . ., I convened a meeting on May 15, 1996 . . . to discuss the allegations. . . . As a result of that meeting, I have taken steps to initiate disciplinary action against three supervisory employees in the Public Works Department."

Appellees alleged that Regus disciplined white individuals (Lambert, Mowrey, and Heath) in the chain of command while not disciplining black individuals (Curtis Brown and Mozell Acey). Appellants contend that the Appellees were due to be disciplined because they did not take all reasonable steps necessary to end the hostile environment at Big Creek and that Brown and Acey were not due to be disciplined because Brown was a sewer supervisor and was never in charge of the discrimination investigation at Big Creek and Acey was not in charge of the investigation nor responsible for the employees who work there.

After narrowing the claims down to the Title VII allegations against Fulton County and the Sections 1981 and 1983 claims against Regus and Cooper, the case was tried to a jury for two weeks. During the Appellees' case-in-chief, portions of

11

a witness's deposition (Josh Kenyon) were read that had been objected-to by Appellants before the trial and excluded in a ruling in limine; Appellants again objected to the testimony and moved for a mistrial which the court denied. During Appellees' cross-examination of Regus, counsel for Appellees sought to introduce the criminal record of Arthur Glass (a witness) and openly provided opposing counsel with a copy of the record in the presence of the jury and before the court sustained Appellants' objection to its introduction. After the close of Appellees' case-in-chief, Appellants moved for judgment as a matter of law pursuant to Rule 50(a) which the court denied. At the close of all evidence, Appellants again moved for judgment as a matter of law and requested that Regus and Cooper be granted qualified immunity. The court largely denied the Rule 50(a) motion, but reserved ruling on that aspect of the motion based on qualified immunity. Prior to closing arguments, Appellants moved to dismiss the Appellees' punitive damages claims; the court agreed to take the motion under advisement but nonetheless charged the jury on punitive damages.

On May 5, 2000, the jury returned a verdict for Appellees. Against Fulton County, the jury awarded the Appellees back pay in the amounts of $10,398.33 for Lambert, $4,204.00 for Mowrey, and $3,679.18 for Heath and compensatory damages in the amount of $425,000 for each Appellee. Against Regus, the jury

12

awarded each Appellee compensatory damages in the amount of $50,000 and punitive damages in the amount of $225,000.  Against Cooper, the jury awarded each Appellee compensatory damages of $50,000 and punitive damages of $225,000.  After the jury was excused, Appellants asked the court to rule on the qualified immunity motion, which the court denied; Appellants also asked the court to rule on the punitive damages dismissal motion, on which the court again reserved ruling.  The court denied Appellants' motion to dismiss the punitive damages award, declined to reduce the punitive damages award,[6] and entered final judgment on May 30, 2000.

On June 13, 2000, Appellants timely renewed their motion for judgment as a matter of law and alternatively, moved for a new trial. The court denied the motions and entered judgment in accordance with the jury's verdict on July 19, 2000.  These appeals ensued.

## II.  Sufficiency of the Evidence

We review de novo the district court's denial of the Appellants' motions for judgment as a matter of law on the issue of sufficiency of the evidence to support the jury's verdicts, applying the same standard as the district court. See

---

[6] Although the court did reduce the $425,000 compensatory damages award against Fulton County for each Appellee to $300,000.

13

Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir.1999). In applying that standard, "we review the evidence 'in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party.'" Montgomery, 168 F.3d at 1289 (quoting Walker v. NationsBank of Fla., N.A., 53 F.3d 1548, 1555 (11th Cir.1995)). We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence. See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 582 (11th Cir. 2000).

Appellants argue that the jury's verdict should be reversed because it was not supported by the evidence. After a careful review of the record, we find that there was sufficient evidence to support the jury verdicts as to all three Appellants. There was ample evidence for the jury to conclude that the conduct of Cooper was motivated by a racially evil motive or intent. Cooper conducted a several month investigation so that a statement could be submitted to the EEOC responding to the charges filed by the two Big Creek employees. The County Attorneys told Regus that Cooper's report of his investigation was totally insufficient to justify Cooper's recommendation that discipline be imposed on unnamed supervisors. Regus asked Cooper for another report that, when submitted, accused six white employees, including plaintiffs, of engaging in racist discrimination and allowing it to continue. Regus also had in his possession a report prepared by Bockman, assisted

14

by Acey, that catalogued evidence refuting Cooper's allegations, expressed concern about Cooper's "false accusations" and found no fault on the part of Appellees. Regus was aware that Cooper was emotionally involved in the investigation and that his revised report was based on a poorly conducted investigation which reached conclusions that were not supported by facts and which were the result of a conscious decision by Cooper to color the facts to support the conclusion that Cooper desired. However, despite Bockman's support of plaintiffs and Bockman's refusal to discipline plaintiffs himself, Regus chose to personally find fault on the part of plaintiffs and personally sign plaintiffs disciplinary letters. At the same time, Regus treated similarly situated black employees, namely Acey and Brown,[7] more leniently than the white plaintiffs and imposed no real discipline on Cooper even though Cooper's misconduct, unlike that of plaintiffs, was willful. Regus supplied the County Commission with a copy of Cooper's report three days before he imposed discipline on plaintiffs but failed to provide the Commission with a copy of Bockman's report. Although Regus testified that he did not rely on Cooper's report in disciplining plaintiffs, the jury could easily have disbelieved that testimony and found that, throughout the

---

[7] Curtis Brown was the immediate supervisor of the two Big Creek employees who filed the charges with the EEOC. His immediate supervisor was Appellant Heath.

15

process, Regus knowingly and intentionally endorsed Cooper's discriminatory acts.

Not only was there sufficient evidence to support the jury verdicts, but the record also clearly reflects that the jury's attention to critical elements of Appellees' claims was focused by a series of special interrogatories in the verdict form addressing separately each Appellee's claims against each Appellant. Among other matters, the jury expressly found by their answers, (a) that Regus and Cooper intentionally discriminated against each Appellee in the terms or conditions of his employment based upon the race of each Appellee, (b) that each Appellee should recover from Regus and from Cooper $50,000 compensatory damages and $225,000 punitive damages, (c) that Regus and Cooper each acted with malice or reckless indifference to each Appellee's federally protected rights, and (d) that the race of each Appellee was a substantial or motivating factor which prompted Fulton County to discipline each Appellee.

### III. Motions for New Trial

The standard of review for a district court's disposition of a motion for new trial is abuse of discretion. See McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir.1990). Appellants in this case argue that the district court erred by not granting their motions for new trial because the district court admitted evidence

16

of media coverage; because the district court failed to declare a mistrial following the improper reading of previously excluded portions of the deposition testimony of Josh Kenyon; and because of misconduct of Appellees' counsel in the form of (a) reading the previously excluded portion of Kenyon's deposition and, (b) openly providing opposing counsel a record of a prior conviction of a witness (Arthur Glass, Jr.) before the court sustained the objection raised by counsel for Appellants.[8]      The district court had considerable discretion under Fed. R. Evid. 403 to balance probative value and unfair prejudice when deciding whether to receive into evidence (1) articles from a local newspaper about the Big Creek charges and the disciplining of Appellees, and (2) a portion of a local television investigative newscast. See United States v. Gilliard, 133 F.3d 809, 815 (11th Cir. 1998). The newspaper articles and the television newscast were a foreseeable consequence of Appellants' behavior and were certainly relevant to the issue of compensatory damages. At least two of the Appellees testified that the articles

---

[8] Appellants also argue that a new trial should be granted because the jury's verdict was against the weight of the evidence, see discussion supra Part II, and because the punitive damages awards were excessive, see discussion infra Part V. Finally, Appellants argue that a new trial should be granted because of newly discovered evidence in the form of the post-trial guilty plea by Kenyon to a crime of dishonesty that would have been admissible under Fed. R. Evid. 609(a). To this argument, we need only note the former Fifth Circuit's decision in NLRB v. Jacob E. Decker & Sons, 569 F.2d 357, 365 (5th Cir. 1978) (holding that "new evidence" discovered after trial does not warrant a new trial when its only purpose would be to impeach a witness).

17

humiliated them. The fact that Appellants played no role in the preparation or dissemination of the articles does not render them irrelevant, unfairly prejudicial, confusing, or likely to mislead the jury. See Fed. R. Evid. 403. Further, we are unpersuaded that Appellants were unfairly prejudiced when the district court did not require or permit the jury to see the portion of the television newscast containing an interview of Terry Adams. The newscast contained interviews of several persons, but Appellees did not offer the portion containing the Adams interview; because "the rule of completeness" embodied in Fed. R. Evid. 106 does not extend to a different interview of a different witness, the district court did not abuse its discretion in admitting only a portion of that newscast. With respect to Kenyon's deposition testimony and the "Arthur Glass" incident, we stress that (1) the district court acted promptly to inform the jury to ignore the offending Kenyon testimony, (2) Kenyon was not a critical witness, (3) the Kenyon testimony did not concern Cooper's conduct in this particular case, and (4) the district court was in a far better position than we are to evaluate possible prejudice from the courtroom behavior of counsel for Appellees during the "Arthur Glass" incident. After having considered these arguments both singularly and collectively, we find that they do not rise to the level of abuse of discretion in this case.

## IV. Qualified Immunity

We review de novo the denial of qualified immunity. See Jordan v. Doe, 38 F.3d 1559, 1563 (11th Cir.1994). "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 409 (1982)). In analyzing the affirmative defense of qualified immunity, we first consider whether Regus and Cooper were acting within the scope of their discretionary authority when the disciplinary decisions at issue were made. See Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir.1997). On this record, it is undisputed that they were. Thus, to eliminate the defense of qualified immunity, Appellees have the burden to demonstrate that the wrongful acts by Regus and Cooper violated clearly established law based upon objective standards. See id. Appellees have clearly met this burden since there can be no doubt that at the time of the operative facts in this case, it was clearly established by binding precedent in this circuit that intentional discrimination by a state actor in the workplace on account of race violated the Fourteenth Amendment. See Smith v. Lomax, 45 F.3d 402, 407 (11th

19

Cir.1995); <u>Yeldell v. Cooper Green Hosp., Inc.</u>, 956 F.2d 1056, 1064 (11th Cir. 1992) (holding that in 1989 it could hardly be argued that intentional discrimination in public employment did not violate the Fourteenth Amendment). By special interrogatory, the jury unequivocally determined that Regus and Cooper intentionally discriminated against Heath, Mowrey, and Lambert on the basis of race in the challenged employment decisions, and thus the district court properly denied the Appellants' motions for judgment as a matter of law on the issue of qualified immunity.   See <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1321 (11th Cir. 2000).

## V.  Punitive Damages

Regus and Cooper's challenge to the sufficiency of evidence as to punitive damages is governed by Fed. R. Civ. P. 50. We review <u>de novo</u> the denial of Appellants' renewed motion for judgment as a matter of law on the issue of punitive damages. <u>See</u> <u>EEOC v. W&O, Inc.</u>, 213 F.3d 600, 610 (11th Cir. 2000). Applying the same standards as the district court, we "'consider whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Id.</u> (quoting <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1526 (11th Cir.1997)). We must "'consider all the evidence, and the inferences drawn therefrom, in the light

20

most favorable to the nonmoving party.'" Id. (quoting Combs, 106 F.3d at 1526).

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632, 651 (1983). See Kolstad v. American Dental Ass'n, 527 U.S. 526, 534-538, 119 S. Ct. 2118, 2124-25, 144 L. Ed. 2d 494 (1999) (holding that the Smith standard for an award of punitive damages in an employment discrimination case is satisfied by a showing of either an evil intention to deprive a plaintiff of his federally protected rights or a conscious indifference to those rights). Where, as here, (1) there is no argument or evidence that Cooper or Regus genuinely believed that racial discrimination in the context of this case was permissible, and (2) there is ample evidence that both Regus and Cooper intentionally discriminated against Appellants because of their race, nothing more is required to support an award of punitive damages. See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1337-38 (11th Cir. 2000) (holding that defendant's knowledge that it is illegal to treat employees differently on account of race, coupled with credible evidence that defendant intentionally did so, is sufficient for a reasonable jury to conclude that the Kolstad standard for punitive damages has been satisfied). After considering

21

all of the evidence and the jury's findings,[9] we conclude that the evidence is sufficient to support the jury's findings and an award of punitive damages in this case.

Appellants' also challenge the amount of punitive damages, which challenge is governed by Fed. R. Civ. P. 59(e). We "'will not overturn a denial of a Rule 59 motion absent an abuse of discretion.'" W&O, Inc., 213 F.3d at 610 (quoting Mays v. United States Postal Serv., 122 F.3d 43, 46 (11th Cir.1997)).  In this case, the ratio of actual damages to punitive damages awarded for each Appellee against each Appellant is 4.5:1. Under the facts in this case, the punitive damage awards are not constitutionally excessive and we do not find that the district judge abused his discretion in denying Appellants' Rule 59 motion.


## VI.  Conclusion

Accordingly we affirm.

**AFFIRMED.**

---

[9] In its answer to special interrogatories in the verdict form, after expressly finding that Regus and Cooper intentionally discriminated against each Appellee and acted with malice or reckless indifference to their federally protected rights, the jury concluded that each Appellee should recover from Fulton County lost wages of $10,398.33 (Lambert), $4,204.00 (Mowrey), and $3,679.18 (Heath) and compensatory damages of $425,000 (reduced to $300,000 by the judgment entered May 30, 2000).