[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------------------

No. 06-12128
Non-Argument Calendar

------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-03686-CV-TWT-1

IKENGA SMITH,

Plaintiff-Appellant,

versus

STARBAND COMMUNICATIONS, INC.,

Defendant-Appellee.

--------------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

--------------------------------------------

**(November 17, 2006)**

Before EDMONDSON, Chief Judge, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Ikenga Smith ("Smith") appeals the district court's grant of

summary judgment for defendant StarBand Communications, Inc. ("StarBand") on

Smith's claims of racial discrimination pursuant to Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. We find no reversible error and therefore affirm.

Smith, an African-American male, applied for the position of Technical Support Supervisor at StarBand's Marietta, Georgia, facility in October 2003. After the initial screening process, Smith was selected as a finalist–along with Ron McNeely ("McNeely"), a Caucasian male, and Ted Blizzard ("Blizzard'), an African-American male--by the final decisionmaker, Tim Kelly ("Kelly"), and three other managers (collectively, the "managers"). Because the finalists' scores were very close, a fourth manager, Tim Southard ("Southard"), was asked to assess the three candidates; he concluded that they were equally qualified.

Kelly then requested input from the other Technical Support Supervisors (collectively, the "supervisors"). Two of the three supervisors ranked Smith last out of the three candidates. These supervisors also expressed concerns over Smith's communication and supervisory skills, specifically noting Smith's arrogance in dealing with the supervisors and referencing an incident between Smith and a former employee, Leah Kamau ("Kamau"), that arose when Smith was temporarily supervising Kamau. The remaining team member, Smith's direct supervisor, ranked Smith second behind Blizzard. After discussing the supervisors' concerns with the other managers, Kelly chose to promote McNeely.

2

Smith filed this Title VII and section 1981 suit, alleging that he was either "qualified or more qualified for" the supervisor position compared to McNeely and seeking backpay, compensatory and punitive damages, and litigation expenses. After discovery, StarBand moved for summary judgment, contending that race was no factor in its consideration of the candidates and arguing that its decision was based on a legitimate, non-discriminatory reason: namely, the input from the managers and supervisors on the import of Smith's negative rapport with the supervisors and the incident with Kamau. The magistrate judge determined that, although Smith had met his burden of establishing a prima facie case of discrimination, he failed to show that StarBand's asserted reason was a mere pretext for a true discriminatory motive. After a de novo review of the record, the district court adopted the magistrate's Report and Recommendation, granting summary judgment in favor of StarBand. Smith now appeals from that order.

We review a district court's order granting summary judgment de novo, viewing all facts in the record in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor. Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001). The moving party must show that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Id. To survive a motion for summary judgment, the non-moving

3

party must introduce "significantly probative evidence" showing that the jury could reasonably find for that party. See Brooks v. County Comm'n, 446 F.3d 1160, 1162-63 (11th Cir. 2006).

We analyze claims of racial discrimination based on circumstantial evidence under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 368 (1973). If a plaintiff establishes a prima facie case of discrimination, the defendant then has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. McDonnell Douglas, 411 U.S. at 802-03, 93 S.Ct. 1817, 1824. The plaintiff must then persuade the court that the proffered reasons were pretexts for unlawful discrimination. Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000). The plaintiff must show both that the "reason was false, and that discrimination was the real reason." Brooks, 446 F.3d at 1163 (11th Cir. 2006) (citation and internal quotation marks omitted). The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered . . . reasons . . . that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).

4

On appeal, Smith argues that summary judgment was inappropriate because he presented several triable issues of material fact about whether the legitimate reason offered by StarBand for the employment decision was pretextual. Smith contends that (1) inaccurate statements made by a former StarBand manager, Holly Hill ("Hill"), in her affidavit to the Equal Employment Opportunity Commission support the inference that StarBand's stated reasons for not promoting Smith are contradictory and pretextual; (2) Kelly's prior performance appraisals of Smith and initial rating of Smith in the selection process–both of which indicate that Kelly thought Smith was qualified for the job and had superior teamwork and communication skills, despite the Kamau incident and Smith's problems with the supervisors–raise a triable issue of fact on whether Kelly sincerely believed McNeely was the better candidate; and (3) Smith's superior qualifications relative to McNeely's[1] creates a triable issue of fact about pretext. We disagree.

First, the misstatements by Hill do not create a triable issue of material fact because they do not address Kelly's proffered reasons for choosing McNeely over

---

[1] Smith specifically asserts that he was the superior candidate because he had been with StarBand for three years when the supervisor position became available, while McNeely had only been with the company for nine months. Smith also contends that he had received prior promotions, had mid-level experience as a team leader, and had actual experience as a supervisor with StarBand, while McNeely did not.

5

Smith. Hill's affidavit incorrectly stated that the position was first offered to Blizzard, then to McNeely.[2] Even if this inaccuracy "misleadingly raises the inference that the Caucasian candidate (McNeely) was chosen after the leading African-American candidate (Blizzard) withdrew from the process," as Smith contends, it does not indicate that Kelly's decision was not influenced by the input of the supervisors and managers.

Second, that Kelly regarded Smith as qualified for the position and placed little emphasis on the Kamau incident and Smith's strained rapport with the supervisors <u>before</u> receiving input from the other managers and the supervisors does not indicate that Kelly did not sincerely believe the supervisors' reports or that he did not place greater emphasis on these incidents <u>after</u> receiving input from the managers and supervisors. StarBand does not dispute that Kelly thought Smith was qualified for the position; his selection as a finalist indicates as much. Kelly testified that he initially thought the incident with Kamau and the reports of Smith's problems with the supervisors were not "overwhelming," but that his decision took into account that there were "other parties at play in this business, and I'm not making a decision in a vacuum." Smith evidenced nothing showing

---

[2]Kelly testified that he probably would have promoted Blizzard if he had not felt that Blizzard lacked real desire for the promotion.

that Kelly did not honestly believe that the reported incidents occurred and that they affected the supervisors' and managers' perception of Smith. See Cooper v. Southern Co., 390 F.3d 695, 730 (11th Cir. 2001). More important, Smith produced no evidence refuting Kelly's statement that his decision was motivated by the input of the other managers and supervisors.

Third, Smith failed to show that the disparities between his qualifications and McNeely's were so severe that "no reasonable person, in the exercise of judgment, could have chosen [McNeely over Smith]." Id. at 732; see also Ash v. Tyson Foods, Inc., 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006) (per curiam) (approving this language from Cooper). The record shows that McNeely and Smith were roughly equally qualified for the position. Their scores from the initial screening and interview process were very close. When Southard, a manager from another division, was asked to evaluate the final candidates, he could not distinguish one above the other. Kelly himself testified that both candidates were roughly equal in terms of qualifications–while Smith may have had the edge in experience, McNeely appeared to have superior education. The evidence does not support Smith's contention that the disparity between his and McNeely's qualifications shows that StarBand's reasons for hiring McNeely, rather than Smith, were pretextual.

Because Smith has failed to introduce evidence that the reason proffered by StarBand was a mere pretext for racial discrimination, the district court properly granted StarBand's motion for summary judgment. The judgment is therefore AFFIRMED.