[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13964

Non-Argument Calendar

_____

ROBIN SIFF,

Plaintiff-Appellant,

versus

AUDIOLOGY DISTRIBUTION, LLC,
a foreign limited liability company d.b.a. HearUSA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-61606-AHS

_____

Before WILSON, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Robin Siff appeals from the district court's order granting summary judgment in favor of her former employer, Audiology Distribution, LLC ("ADL"), on her claims alleging race, national origin, and religion-based discrimination and retaliation, in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.*  Because Ms. Siff has failed to create a genuine issue of material fact as to whether ADL's reasons for firing her were pretextual, we affirm.

I

Ms. Siff worked for ADL for about 21 years as an audiologist. For 17 of those years, including the time just prior to her termination, she worked as the principal audiologist at ADL's center in Hollywood, Florida.  Ms. Siff was the sole provider staffing the Hollywood center, except for the one day per week when a bilingual professional would come in to assist patients who did not speak English.

In 2017, after a company-wide restructuring, ADL hired a new leadership team and Ms. Siff's supervisors changed.  Irene Poinelli was hired as ADL's Vice-President of Sales for the East Coast Territory, which included Florida, and Adriana Galvis

became Ms. Siff's direct supervisor. Problems between Ms. Siff and Ms. Galvis started about six months thereafter.

Ms. Siff is non-Hispanic, not bilingual, and Jewish. Within Ms. Galvis' first year as Ms. Siff's supervisor, Ms. Galvis engaged in several acts Ms. Siff perceived as discriminatory. Ms. Siff maintains that, in February of 2018, Ms. Galvis conducted a meeting in Spanish with a potential client and referral source so that Ms. Siff could not effectively understand or participate. Ms. Galvis also spoke Spanish to Ms. Siff's Spanish-speaking clients in front of Ms. Siff, which Ms. Siff found humiliating and discriminatory. According to Ms. Siff, Ms. Galvis suggested in March of 2018 that Ms. Siff transfer to a different center so that Ms. Galvis could replace her in Hollywood with a Spanish-speaking audiologist, or that Ms. Siff transfer all the Hollywood center's Spanish-speaking patients to a Spanish-speaking provider.

Starting in May of 2018, Ms. Galvis also refused to honor a schedule modification to which ADL's prior management had agreed, which allowed Ms. Siff to take off every other Friday and permitted her to schedule her first patient appointments at 9:00 a.m., as opposed to 8:30 a.m. Ms. Siff alleges that Hispanic and Spanish-speaking audiologists were allowed to keep modified schedules. She does not dispute, however, that her one proposed comparator on this point was only allowed to keep a similar modified schedule in exchange for deferring her retirement and because she was transferred to a new location that started with zero patients.

On August 6, 2018, Ms. Siff requested paid time off ("PTO") for two Jewish holidays—Yom Kippur and Rosh Hashanah. Ms. Galvis granted the request for Yom Kippur but denied the request for Rosh Hashanah. When Ms. Siff spoke to Ms. Galvis about the denial, Ms. Galvis told Ms. Siff that she had already taken too many days off in August and September. On September 7, 2018, Ms. Siff sent an e-mail to Ms. Galvis, Ms. Poinelli, and several others, asking that her PTO request for Rosh Hashanah be granted. By the end of the day, Ms. Poinelli approved Ms. Siff's PTO request.

Throughout that same year, Ms. Siff received many customer complaints, including three in October. On October 18 and October 23, 2018, Ms. Galvis provided Ms. Poinelli with summaries of recent customer complaints and other problems she had with Ms. Siff. Ms. Siff disputes the accuracy and characterization of these summaries, but she does not dispute that customers made the underlying complaints. On November 5, 2018, after another customer complained about Ms. Siff, ADL issued a written warning to her for failure to provide the expected level of customer service and patient care, summarizing five recent complaints made about her. This was the first time ADL disciplined Ms. Siff for job performance in her 20-year career.

In October of 2018, the beginning of ADL's new fiscal year, Ms. Poinelli reviewed financial results from the prior fiscal year and saw that the Hollywood center failed to make its budget five months in a row and missed the previous year's overall financial results by approximately $100,000. After Ms. Siff missed her budget

again in November of 2018, Ms. Galvis issued a Performance Improvement Plan ("PIP") for Ms. Siff on December 13, 2018. The PIP explained that failure to immediately improve and sustain performance could result in termination.

Ms. Siff alleges that five other centers missed their budgets that same year, though only one missed its budget by a greater amount than Ms. Siff. Ms. Siff further contends that none of these centers' providers were placed on a PIP, a contention which ADL disputes. However, Ms. Siff has not alleged any facts showing why these centers' providers should be treated as comparators for her—such as whether they are the same size or have the same number of providers—other than claiming that they missed their budgets in the same fiscal year.

Ms. Galvis issued a final written warning to Ms. Siff after she received another customer complaint on December 17, 2018. Ms. Siff disputes the legitimacy of this complaint and her share of the blame, but does not dispute that a customer made the complaint.

Ms. Siff's financial performance improved in the first few months of 2019, but ADL chose to fire her after it received another customer complaint on March 20, 2019. Ms. Siff alleged that the dispute was "fabricated, manipulated and exaggerated." The complaint is described in case notes taken by a woman named Donna Benedict, who investigated the complaint. Ms. Siff never alleges that these specific notes were fabricated nor that Ms. Benedict harbored the same allegedly discriminatory motives as Ms. Poinelli and Ms. Galvis. ADL contends it disciplined and ultimately

6                    Opinion of the Court                    20-13964

terminated Ms. Siff because of her poor job performance and personal conduct.

Ms. Siff asserts that Ms. Galvis and Ms. Poinelli terminated her because she is Jewish, non-Hispanic, and/or not bilingual, and in retaliation for requesting PTO and for challenging the initial denial of that request.  Ms. Siff filed this employment discrimination suit against ADL on June 26, 2019.  After some discovery, ADL moved for summary judgment.  The district court granted ADL's motion and Ms. Siff appealed.

## II

We review a district court's order granting summary judgment *de novo*, "viewing all evidence, and drawing all reasonable inferences, in favor of the non-moving party."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).  Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  "We may affirm a district-court judgment on any ground supported in the record, even if the district court did not specifically address it." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1280 (11th Cir. 2020).

## A

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similarly, § 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts. *See* 42 U.S.C. § 1981(a). With respect to employment contracts, claims of discrimination under § 1981 are analyzed under the same framework as claims of discrimination under Title VII. *See Ferrill v. Parker Grp.*, 168 F.3d 468, 472 (11th Cir. 1999). Likewise, "[t]he Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). So we discuss all claims together.

In the absence of direct evidence, a plaintiff can prove a discrimination claim under Title VII through circumstantial evidence, which we generally analyze using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by showing: "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) ("*Lewis I*"). Once a plaintiff establishes her prima facie

case, a rebuttable presumption arises that the employer unlawfully discriminated against her, and the burden shifts to the employer to present evidence that its action was taken for a legitimate, nondiscriminatory reason. *See id.*

If the defendant makes such a showing, the plaintiff then bears the burden of showing that the employer's proffered reasons were pretext, or "not the real reasons" for the employment decision. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). An employee may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001). The employee must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's stated reasons is untrue. *See Combs*, 106 F.3d at 1529. If the plaintiff's evidence is insufficient to create a genuine issue of fact as to each reason, the employer is entitled to summary judgment. *See id.*

We will assume arguendo that Ms. Siff has made out a prima facie case of discrimination. Even so, summary judgment for ADL was appropriate because Ms. Siff failed to show a genuine dispute existed over whether ADL's reasons for firing her were pretextual.

ADL had many legitimate reasons to discipline and ultimately terminate Ms. Siff based on her own performance.[1]

Various customers complained about Ms. Siff. Even after receiving a final written warning notifying her that she was at risk of being terminated, Ms. Siff received at least one more customer complaint. An employer is allowed to, in good faith, rely on customer services complaints in determining whether to terminate an employee. *See, e.g., Elrod v. Sears*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("The inquiry . . . is limited to whether [the defendants] believed that [the plaintiff] was guilty of [misconduct], and if so, whether this belief was the reason behind [the plaintiff's] discharge."). It is true that Ms. Siff disputes the accuracy and fairness of those complaints as well as her share of the blame. But as she does not dispute that her customers made those complaints, ADL was entitled to rely on them. Ms. Siff argues that she was never disciplined for customer complaints about her before, but that is irrelevant because Ms. Siff's supervisors changed, as did their expectations.

When she was fired, Ms. Siff was on a PIP for missing her 2017–2018 budget by over $100,000. Ms. Siff does not argue that these numbers were incorrect. Instead, she argues that ADL's reasons were clearly pretextual because ADL did not put similarly

---

[1] The district court concluded that there was no evidence that Ms. Siff suffered an adverse employment action. The district court erred in this regard, as termination is an adverse employment action.

situated employees on PIPs.  But "a plaintiff asserting an intentional discrimination claim under *McDonnell Douglas* must demonstrate that she and her proferred comparators were 'similarly situated in all material respects.'"  *Lewis I*, 918 F.3d at 1218.  Only one of the centers Ms. Siff mentions missed its budget by an amount greater than hers.  And Ms. Siff fails to explain why those centers should be treated as similar to hers in all material respects when they were in different locations and, in some instances, had different numbers of providers.  Though Ms. Siff improved her center's financial performance, ADL's PIP required sustained improvement on both her financial performance and her level of customer complaints.  Ms. Siff failed to sustain her improvement when she received an additional customer complaint in March.

Ms. Siff also argues that ADL allowed another Hispanic and Spanish-speaking employee to have a modified schedule that she could no longer have, but that employee is dissimilar to Ms. Siff in material ways given her agreement to work a modified schedule in lieu of retirement and her role in opening a new center starting with zero patients.  More importantly, Ms. Siff's prior modified schedule was no longer an issue at the time ADL terminated Ms. Siff.

Ms. Siff argues that the timing of her discipline and termination tends to show that its reasons for firing her were pretextual.  But this is unconvincing given the number of customer complaints she received from the time she opposed her initial PTO denial to her termination.   Ms. Siff received at least three customer

complaints in October of 2018 alone, the month after the PTO dispute. ADL did not issue any disciplinary action until November 2, 2018, immediately following the October complaints but nearly two months after the PTO dispute.

In short, Ms. Siff failed to put forth sufficient evidence to establish that ADL's reasons for firing her were pretextual. The district court therefore did not err in granting ADL's motion for summary judgment as to her discrimination claim.[2]

## B

Under Title VII, an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The three-step, burden-shifting *McDonnell*

---

[2] Ms. Siff argues that even if she failed to carry her burden under the *McDonnell Douglas* framework by failing to put forth an adequate comparator, she has presented a "convincing mosaic" of evidence of discrimination and her case should be analyzed under this framework. *See Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*"). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* Because each of these factors fails to help Ms. Siff establish pretext, we conclude that Ms. Siff's mosaic of evidence is insufficient to survive summary judgment.

*Douglas* framework also applies to cases of retaliation relying on circumstantial evidence. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse action, and (3) there is a causal link between the protected activity and the adverse action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). In the retaliation context, a materially adverse action is one which might have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See Monaghan v. Worldplay US, Inc.*, 955 F.3d 855, 861–62 (11th Cir. 2020).

"Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington*, 261 F.3d at 1266. If the employer meets this burden, the presumption of retaliation disappears, and the plaintiff must demonstrate that the employer's reasons are a "pretext for prohibited retaliatory conduct." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).

Summary judgment was also appropriate on Ms. Siff's retaliation claims. Here, again, we assume Ms. Siff established a prima facie case of retaliation. But ADL presented several legitimate, non-retaliatory reasons for terminating her. As explained above, Ms. Siff has failed to genuinely dispute that ADL terminated her because of her failure to meet her budget and the continuous

complaints customers against her.  On top of this, Ms. Poinelli approved the PTO request that Ms. Galvis denied shortly after learning of it, and Ms. Siff was not fired for a full six months after she contested the denial of the PTO request.  Half a year is too attenuated to infer a connection to Ms. Siff's PTO request for purposes of a retaliation claim.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (finding three-month delay between protected expression and adverse action insufficient to support a retaliation claim as a matter of law).  In short, Ms. Siff's retaliation claim fails for the same reasons her discrimination claim fails and summary judgment was appropriate.

## III

We affirm the district court's grant of summary judgment to ADL on Ms. Siff's discrimination and retaliation claims.

**AFFIRMED.**